Nancy Corinne DYER and J. Raymond Dyer, Petitioners,

v.

SECURITIES AND EXCHANGE COM-MISSION, Respondent,

Union Electric Company, Intervenor-Respondent.

No. 15765.

United States Court of Appeals Eighth Circuit.

Feb. 27, 1961.

Rehearing Denied April 12, 1961.

J. Raymond Dyer, St. Louis, Mo., filed brief and made argument for petitioners.

Aaron Levy, Special Counsel for Securities & Exchange Commission made argument for the respondent, Securities

& Exchange Commission and Thomas G. Meeker, Daniel J. McCauley, Jr., and Joseph S. Mitchell, Jr., Securities & Exchange Commission, Washington, D. C., were with him on the brief.

Robert J. Keefe, St. Louis, Mo., made argument in behalf of Union Electric Co., intervenor-respondent and William H. Ferrell, St. Louis, Mo., and J. M. Lashly, St. Louis, Mo., were with him on the brief.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

JOHNSEN, Chief Judge.

### I.

This proceeding is one under 15 U.S. C.A. § 79x(a), for review of an order of the Securities and Exchange Commission, which permitted a declaration, as amended, filed by the management of Union Electric Company, of St. Louis Missouri, to become effective as a basis for the solicitation of proxies from stockholders for the corporation's 1957 annual meeting.

A requirement had precedingly been made by the Commission, on the basis of section 12(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79l(e), and Rule U–62 of the Commission's regulations, 17 CFR § 250.62, that anyone intending to solicit proxies for the meeting should file a declaration of the materials desired to be used and obtain the Commission's approval thereof, before such solicitation could be engaged in.

Petitioners, J. Raymond Dyer and his daughter Nancy Corinne Dyer, were owners at the time of 250 shares of Union Electric stock, in the 11¼-million shares outstanding. They have been engaged in controversy with management regarding every annual meeting of stockholders and management's proxy solicitations therefor, as well as over other corporate incidents, since 1956, as indicated by the successive review proceedings which have been and are now pending before us. They have not under-taken to submit any declaration to make proxy solicitations of their own but have primarily directed their efforts at challenging each year the form and substance of management's proxy material and insisting that there be included therein various statements and proposals authored by them.

Thus, in the immediate situation, petitioners had lodged with the Commission a long list of objections to the declaration filed by management and had sought to have various resolutions and by-law amendments prepared by them added as matters for proxy indication or expression. In the circumstances, the Commission chose to deal with the matter through the process of a hearing, under its Rule U–62(e), supra, allowing the Dyers to participate therein, under Rule 17(c) of the Commission's Rules of Practice, 15 U.S.C.A. following section 78u, with the privilege accorded to them of cross-examining witnesses, offering evidence, submitting briefs, etc. It was after a hearing so held that the order of approval here being challenged was made.

This is the second time that the present controversy is before us. When the matter was initially submitted to us, we dismissed the petition for review, Dyer v. Securities and Exchange Commission, 8 Cir., 251 F.2d 512, viewing it as having in practical significance become moot, since we had theretofore denied a request for a stay of the Commission's order and the 1957 meeting had by that time been held—with such personal feelings as might be prompted in the preliminaries to a meeting having ordinarily in that situation run their course.

The Dyers, however, as was their right, were not willing to permit any cooling-off to occur in the situation and, as subsequent events showed, they had already begun to assert contentions and engage in controversy as to the then-approaching 1958 annual meeting. They promptly petitioned the Supreme Court for a writ of certiorari from our order of dismissal as to the 1957 situation. And thereafter, they diligently brought before us for review the order which the

Commission made on management's proxy-solicitation declaration as to the 1958 annual meeting.

It having thus become obvious that the controversy had a personal aspect so far as petitioners were concerned, and that it was likely to remain of a continuing nature, we undertook to engage in a full examination and consideration of all of petitioners' contentions as to the Commission's 1958 order. See Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33. As we expressed it in our opinion, 266 F.2d at page 47, "it is apparent, from the three-year history which has up to this point preceded, that the fight of petitioners against the management of Union Electric is one that is going to have an unremitting and indefinite duration", and "In this situation, not merely from the standpoint of petitioners, but as well from the standpoint of the Commission, the corporation, and the other stockholders, it is desirable to get the questions here involved leveled off, so that the controversy can begin to have some settling in its course."

After engaging in examination of all of petitioners' numerous, compounded and detailed contentions, we were of the firm opinion that the Commission's order of authorization as to management's amended proxy-solicitation statement for the 1958 annual meeting could not be held in any respect to be an improper exercise of the Commission's power of judgment and discretion, under the statute's scope and purpose, either in relation to the general field or in application to the particular situation; and also that there existed no basis for any claim on the part of petitioners of lack of fair play having been involved, either in the processes or the attitudes or the results of the hearing, which the Commission in the circumstances had chosen to hold.

Following our resolution of the 1958 situation on its merits, the Supreme Court vacated the mootness dismissal which we had made of the 1957 case and remanded it to us for further consideration in the light of our expression and decision in 266 F.2d 33. See Dyer v. Securities and Exchange Commission, 359 U.S. 499, 79 S.Ct. 1115, 3 L.Ed.2d 973; 361 U.S. 803, 80 S.Ct. 40, 4 L.Ed.2d 52. Thus, the matter is now again before us and, for the reasons which led us to go into the 1958 situation on its merits, we shall deal with the present controversy in the same manner.

II.

■ A number of the contentions urged as to the 1957 situation had been made the subject of reassertion against the Commission's order in the 1958 controversy and so have been answered by our opinion in 266 F.2d 33. We adhere to that opinion and shall therefore not further discuss or restate such contentions here. Of the rest of petitioners' contentions, some are so frivolous, in the realities necessary to be accorded the statute, as not to entitle them to request for judicial consideration.

Among these are such contentions as (a) that it was improper to permit management to express the opinion in its proxy statement that the most important thing to come before the meeting was the election of directors; (b) that the Commission should have required the information given as to the shares of stock held by each of management's candidates for director, in connection with his biographical sketch, to be columned on the left-hand side instead of the right-hand side of the page in the proxy statement, to assure more natural notice, since the American eye always reads from left to right; (c) that in management's statement that it recommended against all of the proposals submitted by the Dyers except one, the word "against" should not have been allowed to be put in capital letters; (d) that it was unfair to petitioner J. Raymond Dyer to allow the recentness of the date on which he had become a stockholder to be pointed out in the proxy statement; and (e) that similarly, while it was true that petitioner Nancy Corinne Dyer was a minor, it was not proper for that fact to be stated in the proxy material, because this was "implanting the thought in the minds of

the stockholders that she was both legally and factually incapable of responsible action" and amounted to a violation of the prohibition in Rule X–14A–9 of the Commission's regulations, 17 CFR § 240.-14a–9, against statements which are "misleading with respect to any material fact".

The foregoing contentions are merely illustrative and not exhaustive of matters urged upon us which patently are without any substance as a basis for seeking judicial review. Neither inherently nor on any demonstration in the record is there ground legally to contend that such incidental or collateral details could have any substantiality as factors in proxy-solicitation results. These things thus constituted in the situation mere administrative elements which were in the Commission's domain exclusively, and of which judicial scrutiny was not entitled to be asked, whether the Commission's disposition of them had been one way or the other.

### III.

■ This lack of objectivity on the part of petitioners permeates their contentions also in other areas of their sought review. Apparently, their feeling against the management of Union Electric has evolved into an attitude, so as instinctively to make of almost everything a crusader's cause. Thus, any suggestion on the part of management is to them suspect and must prima facie be made the subject of challenge, against either its substance or its form or both. And in this frame of mind, it is of course not possible for them to understand how anyone can fail to agree with the merit and significance of what they ask to have done, unless there be present some personal bias against them. Thus, they seem to believe that the only explanation which can exist for the Commission's action here is that the members of the Commission are partial to Union Electric and are prejudiced against them. In fact, each step of administrative sifting preliminarily engaged in and each ruling made on the hearing, which is contrary to petitioners' contentions or views, is to

them demonstrative of bias, prejudice, arbitrariness and capriciousness on the part of the Commission and of its Staff, against them and in favor of Union Electric. One example will suffice indicatively.

In the indulgence which was accorded petitioners, the hearing which is here involved was allowed to extend from March 13 to 15, 1957, on the matter of incidents of management's proxy form and statement. On March 21, 1957 (with the annual meeting of the corporation being set for April 20, 1957), the Commission issued an order holding "that the declaration, as amended, filed by Union would meet the standards of the Act if further amended as hereinafter indicated and that due to the exigencies of the situation it is appropriate in the public interest of investors and consumers that this order be issued in advance of the issuance and release of the Commission's Findings and Opinion". Findings and Opinion were thereafter duly filed by the Commission, on April 17, 1957.

Such formal findings and opinion on the part of the Commission are not argued to have been needed or desired for serving some purpose at the annual meeting. And even if this had been the situation, they were in fact issued and filed three days before the time of the meeting. Nevertheless, it is insisted here that, in thus making separation of the filing of its order and the filing of its findings and opinion, the Commission was engaging in "an accommodation to the management of said company, induced by (its) bias and prejudice in favor of said management, and against petitioners and said company's consumers and stockholders". Further, as to the process of preparing such findings and opinion, the Commission is accused of administrative impropriety in allowing members of its Staff to have participated therein, who had in any preliminary correspondence or conference "ruled against petitioners on one point or another".

Petitioners' other contentions of bias, prejudice, capriciousness, etc., on the part of the Commission are of corre-

sponding lack of stature and so call for no further enumeration or discussion here. What we said of the similar charges made by petitioners against the Commission in the 1958 situation, 266 F.2d at page 47, is equally true here— that neither individually nor collectively, on the record before us, do they involve any substance for making challenge on this basis to the Commission's order.

It would be only natural if the Commission might have felt a slight impatience at the vast array of contentions which petitioners undertook to urge, in view of the calibre of the vast majority of them and of the persistence with which petitioners kept hammering away and seeking to make expansion of each one of them at every possible turn. But if any such feeling of impatience at times existed from the imposition thus involved, it was without earmark of any bias or prejudice, as an infection of the atmosphere of the proceeding, as a contamination of the processes of the hearing, or as a factor entering otherwise into the result reached.

## IV.

We have reserved to the last such of petitioners' contentions as involve any semblance of substance at all for seeking judicial review in the situation. All of these, however, on examination of them, represent matters in which the Commission must judicially be held to have exercised permissible administrative judgment, having regard for the nature of the field involved and the scope of the function entrusted to the Commission therein.

It must be borne in mind, as emphasized in our previous opinion, 266 F.2d at pages 37 and 38, that section 12 (e) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79l(e), does not lay down any prescriptions as to proxy solicitations, but instead it leaves this aspect to the Commission's judgment and discretion, subjecting the field wholly to "such rules and regulations or orders as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers * * *".

What we said in 266 F.2d at page 38 may appropriately be repeated here:

"This grant of legislative or regulatory power, in its relation to proxy solicitation, requires general judicial acceptance of any properly adopted rule, regulation or general order [of the Commission], unless it undebatably is unrelated to, non-facilitative of, or in conflict with, the policy of the Act, or unless it otherwise is so arbitrary or burdensome as to be legally unreasonable.

"It is, however, not for a court to say policy-wise, as petitioners would have us do, that it feels that some relevant rule, regulation or general order as to proxy material and solicitation does not go far enough or is not sufficiently liberal in its provisions, to entitle it to general application. Equally, it is a matter fundamentally for the Commission's judgment whether its rules, regulations or general orders are adequate to promote the policy of the Act in application to the facts of some particular situation.

"Only where the facts are such as to reach beyond the rules, regulations and general orders of the Commission, so that some clear evil or violation of the policy of the Act is in no way touched by their application, is there any basis at all for a court to say that the Commission has not gone far enough in the particular situation. And this basis must represent, not room for difference in judgment, but lack of room legally for any sound difference as to the need to have gone further.

"Similarly, as to orders not of general character but made in relation to the facts of a particular proxy-solicitation situation, with directions going beyond the rules and regulations, must a court accept the Commission's judgment, unless it can be said that what has been done

is without any rational basis on all the elements involved.

"Hence, as we have indicated, neither as to a regulation nor as to a special order in a proxy situation, does it matter that there may be a judicial persuasion that a different and better judgment ought to have been exercised, if the Commission's view or judgment on necessity and appropriateness constitutes a permissible one. And any consideration of the permissibility of the Commission's view, as to resting on a rational basis, must requiredly take into account the factors of the plenary scope of authority and judgment granted the Commission in the proxy field and the administrative experience or expertness which is impliedly entitled to have its play in resolving the question of need or appropriateness."

■ The language "as the Commission deems necessary or appropriate" is legally of the broadest content in its grant of regulatory and administrative power. The Commission's judgment as to necessity or appropriateness in application to the field is therefore not subject to being judicially scrutinized as a matter of doubt or mere disagreement as to the wisdom of the Commission's action but only as a matter of utter lack of any possible rational basis, or of legal arbitrariness, capriciousness or other administrative irresponsibility having been controlling thereof. And where, as here, the Commission has chosen to grant a hearing, in order to make resolution of uncertain or disputed facts, as a basis for the exercise of its judgment on necessity or appropriateness in a particular situation, the statute decrees that "The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive". 15 U.S.C.A. § 79x(a).

■ If the Commission in such a situation has made findings of fact not supported by substantial evidence and has exercised judgment of necessity or appropriateness on the basis thereof, it is doubtless possible to claim error or abuse in respect to the order made. But if the Commission's findings of fact are legally proper under the standard of § 79x(a), then its judgment or conclusion on what may be necessary or appropriate regulatingly to deal with the particular situation by way of special or individual order is, we think, as much required to be viewed in relation to the Commission's broad regulatory power as is any rule or regulation which the Commission has made for general application.

## V.

Petitioners apparently are unwilling to give recognition to the scope of the power of judgment and discretion which the statute thus confers upon the Commission in the field involved. They would make of the field of proxy material and solicitation one in which the Commission's judgment is to be accorded no more basis for exercise and no more authority in respect to necessity or appropriateness in a particular situation than if the Commission were engaged in the conventional administrative responsibility of enforcing specifications and prescriptions given legislative definitiveness in a statute. And they also overlook the fact that what they were seeking to obtain from the Commission, by their demands to have inclusions made in management's proxy materials, was under the statute the according of a privilege to them under the Commission's regulatory powers and not the enforcing of some legal right existing in their stock ownership.

■ The hearing which the Commission had granted thus was not a proceeding for resolving and redressing a legal right on the part of petitioners but was essentially one to enable or assist the Commission to make rational exercise of its regulatory power and judgment on the question of necessary or appropriate privilege in the immediate situation. Since privilege not legal right was involved, it was not a situation in which the statute could be said to have made an absolute requirement for a hearing, nor could it be argued that it was one in

which hearing was necessary as a matter of due process. Had the Commission refused to hold a hearing, it would have had to be demonstrated that the situation was one where, from its nature or circumstances, it was an abuse of discretion for the Commission not to have held a hearing, in order properly to arrive at the facts or soundly to be able to exercise judgment on necessity or appropriateness as to the privilege.

Accordingly, the proceedings involved are not within the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. See Senate Doc. 248, 79th Cong., 2nd Sess., pp. 21–22, 248, 315, 359; Wong Yang Sung v. McGrath, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616. And, as we have indicated, in an attack upon the Commission's rulings and actions as being arbitrary or without rational basis in a particular situation, as related to a matter of privilege, there cannot be an ignoring of the fact that under the statute the privilege, in its existence and scope, primarily depends on what "the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers." 15 U.S.C.A. § 79l(e).

In other words, matters relating to proxy solicitation, such as the form and content of the material which will be allowed to be used, or the extent to which some individual stockholder shall be privileged to have proposals and expressions included in management's proxy form in a particular situation, generally will involve some aspect or degree of regulatory judgment on necessity or appropriateness by the Commission, to which the courts must accord its proper part. Only, therefore, where it can be demonstrated that the Commission has refused to permit the salient facts to come before it or to give them consideration or to accord fair play otherwise in any material respect, or that what it has done is not within the bounds of any rational judgment on necessity or appropriateness which could be arrived at in the immediate situation, will there ordinarily be any basis for seeking judicial review of an order of the Commission on matters of privilege in relation to proxy solicitation.

## VI.

Petitioners have denominated here as "the most important point" in their petition for review their contention that it was not rationally possible for the Commission to hold that two publications made by Union Electric in November 1956 and a letter addressed to stockholders in February 1957 had not constituted preliminary proxy-solicitation incidents on management's part. The Commission concluded from the nature and circumstances of the communications that these incidents had not amounted to or been intended as links in proxy solicitation, within the ban of the Commission's Rule X–14A–1, 17 CFR § 240.14a–1, making the term "solicitation" include "the furnishing of a * * * communication to security holders under circumstances reasonably calculated to result in the procurement * * * of a proxy."

■■ Of course, as pointed out by Judge Learned Hand in Securities and Exchange Commission v. Okin, 2 Cir., 132 F.2d 784, 786, writings or publications directed at stockholders, "which are part of a continuous plan ending in solicitation and which prepare the way for its success," properly may be made the subject of regulation by the Commission as proxy solicitations. But this does not mean that all communications from management to stockholders are inherently part of a continuous plan of proxy solicitation, or that no communication may be made by management to stockholders except with the Commission's approval. And an appraisal made by the Commission (which itself has imposed the prescription against unauthorized proxy-solicitation communications) that some incident of communication in a particular situation does not fall within the ban or spirit of what it has sought to prevent, can hardly call for judicial scrutiny, where its significance and effect cannot be held to be absolutes of law but must be regarded as matters of relative judgment.

■ Without going into the details, it is enough here to say that the communications involved cannot be said to command a conclusion as a matter of law, either one way or the other, on the design, potentiality or consequence of them as proxy-solicitation links. Thus, the Commission's appraisal could not be declared to be without rational basis. Indeed, it is somewhat difficult to see how in any event petitioners could claim that any substance for review could exist on this question, as a matter of prejudice to them, since they did not engage in or undertake to foster a counter-solicitation of proxies for the meeting.

## VII.

Petitioners seem to regard as the next most-important point in this review their contention that the Commission acted arbitrarily in allowing management to exclude from its proxy-solicitation material a resolution "that the company try to do a little better in its stockholder relations, and to that end set up a separate office, distinct and apart from the Secretary's office, and not under the jurisdiction of the Secretary, to handle, under a competent Stockholder Relations Officer, the stockholder relations of the company".

■ Union Electric had taken the position, in refusing to include the proposal, that under the statutes of Missouri, Mo.Rev.St.1949, § 351.360, V.A. M.S., this legally was a matter for by-law amendment and not one for general resolution, since it represented an attempt to create another corporation officer. The Commission's view was stated in its opinion as follows: "Without attempting to determine whether under the laws of Missouri a proposal commanding the directors to create a stockholder relations office is a proper subject for action, it appears to us that the proposal, as drafted and submitted to the company, is so vague and indefinite as to make it impossible for either the board of directors or the stockholders at large to comprehend precisely what the proposal would entail. The functions and purposes of the office to be created are left completely unde-fined in the proposal. We therefore did not feel that we would compel the company to include the proposal in its present form in its proxy statement."

Doubtless, the Commission could, if it had seen fit, have directed Union Electric to include the proposal in its proxy statement for stockholder expression, for whatever significance, if any, the resolution, if adopted, might be capable of having, and we would hardly in that situation have disturbed the Commission's action. (As a matter of fact, when petitioners repeated the request the following year, to have the proposal included in management's proxy statement for that stockholders meeting, management decided to let this be done, presumably to enable it to get rid of the question; and the resolution was duly submitted and defeated.) Just as much, however, in our opinion, was there room for the Commission, as a question of judgment in according or not according the particular privilege, to reach the conclusion and take the position it did, so that its refusal to compel management to include the resolution in its proxy statement cannot be held to be regulatively arbitrary or without rational basis on the circumstances.

## VIII.

Another contention urged by petitioners is that it was improper and prejudicial as against them for the Commission to have ordered management to include in its declaration, by amendment, "A reference in the proxy statement that the Division of Corporate Regulation [Commission Staff] presented as an issue to be determined at the hearing herein the appropriateness, under the standards of Section 12(e) of the Act, of the resolution proposed by J. Raymond Dyer which, if adopted, would authorize the Directors of Union to reimburse expenses of soliciting proxies to any insurgent group of stockholders which is successful in electing a majority of the Board of Union at the next annual meeting and that the Commission did not resolve such issue but reserved jurisdiction with respect thereto".

This had relation to petitioners' Proposal No. 3, which management had permitted to be included in its proxy statement, and which subsequently on vote at the meeting was overwhelmingly defeated. The resolution was one to authorize the Board of Directors, in case any insurgent group succeeded in electing a majority of the directors, "to reimburse * * * that insurgent group of stockholders for all its legitimate expenses or obligations incurred in effecting such change in the membership of the Board of Directors, including expenses or obligations incurred in the procuring and processing of stockholders' lists, in preparing and processing proxy cards, in mailing and travelling, and in securing the advice and service of competent, legal, technical and public relations counsellors * * *".

Petitioners argue that by the Commission's indication that it was reserving and not immediately passing on the question of the appropriateness, either as to nature or extent, of the reimbursement authorization proposal in its relation to 15 U.S.C.A. § 79l(e), it was creating "the very strong implication that there was something fishy, something illegal or improper, about Proposal No. 3"; that the Commission thereby was guilty of having "gratuitously put in its oar to help Union defeat that proposal covering reimbursement"; and that it thus "very effectively spiked any chances petitioners had of getting any financial support for their attempt to oust Union's management for [alleged] malfeasance in office".

■ This only further points up the strained character of petitioners' viewpoints and contentions and the subjective basis on which they are seeking judicial review. We could not judicially hold that the Commission was without power or discretion to decline to make an immediate and abstract ruling on the appropriateness of reimbursement of this nature or of such blanket scope as the resolution covered. No more would we have a right to say that, if the Commission chose to exercise this discretion it was not privileged to make it clear that,

in giving its approval to management's voluntary inclusion of the resolution in its proxy statement, the Commission was not intending any recognition of appropriateness or any element of estoppel in relation to its authority to deal with the question specifically and on its immediate circumstances, should a need arise to do so. No such need would exist as between petitioners and the corporation, if the resolution failed of stockholder approval —as overwhelmingly occurred.

## IX.

In the present case, as in the situation with which we have precedingly dealt, 266 F.2d 33, our opinion could be made to go on indefinitely. Petitioners may be given credit for one conservative statement in their briefs—the observation made by them that they have raised "quite a few points". What we finally felt it necessary to say in our previous opinion, 266 F.2d at page 46, will similarly be adopted as our course here: "The extent and nature of the things argued * * * neither merit nor warrant us in so prolonging our opinion. It has already been allowed to go beyond the point of any useful purpose that can legally be served, in a matter which increasingly impresses that it is more permeated with the fertility of crusade than the objectivity of advocacy. We have, however, responsibly engaged in the laborious task of ferreting out, in the jungle of expression before us, all of petitioners' scattered contentions and considering them, so as to be certain that there is nothing * * * that entitles, petitioners in any respect to have the Commission's orders reversed".

■ A closing word of explanation ought perhaps to be added. As we have indicated, we have conscientiously tried to wade through and consider all of petitioners' numerous, scattered, and unceasingly multiplied contentions. The writer of this opinion has, however, taken the liberty of purposely delaying it, in the hope that some of the personal heat in the situation might cool into a little impersonal light. Possibly the hope is fu-

tile, and the delay thus may have been useless. But we do not think it improper to say that somewhere the realization must come that the proxy inclusion-and-expression privilege is an element of regulation and not of license in corporate democracy, and that, whether in general or particular situation, its measure of scope lies in the legislative language "as the Commission deems necessary or appropriate", unless the Commission acts without rational basis or without fair play.

Affirmed.