The NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Plaintiff,

v.

BRUNSWICK CORPORATION, Defendant.

No. 92 Civ. 1714 (RPP).

United States District Court, S.D. New York.

April 21, 1992.

O. Peter Sherwood, Corp. Counsel of City of New York by Hilary B. Klein, Steven Stein Cushman, New York City, for plaintiff.

Mayer, Brown & Platt by Steven Wolowitz, New York City, Mayer, Brown & Platt by James D. Holzhauer, Frederick Levin, Chicago, Ill., for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff, The New York City Employees' Retirement System ("NYCERS") moves by order to show cause, and by complaint filed March 10, 1992, for an order granting a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendant Brunswick Corporation ("Brunswick") from soliciting shareholder proxies for Defendant's annual stockholders' meeting without informing Defendant's shareholders of NYCERS's shareholder proposal ("the Proposal") submitted to Defendant by letter dated November 21, 1991 from Elizabeth Holtzman, Comptroller of the City of New York.

## FACTS

NYCERS is a shareholder of Brunswick holding 283,500 shares of common stock. The Proposal was as follows:

NATIONAL HEALTH CARE PROPOSAL

WHEREAS, some thirty-seven million United States Citizens have no health insurance coverage; and

WHEREAS, among the industrial nations of the world, only the United States and the Republic of South Africa have no national health care; and

WHEREAS, we believe that the right of every American to basic health care is a national policy issue; and

WHEREAS, with health care consuming 45 percent of the operating profits of U.S. corporations and 12.1 percent of our gross national product, we believe that the concern over rising costs and cost containment

obscures the national policy issue of the right of every American to basic care; and

WHEREAS, as shareholders we are concerned that the costs and inadequate quality of health care in the United States threaten to undermine the company's competitive advantage in the international market place; and

WHEREAS, because corporations and government are the two major providers of health care benefits, we believe that corporations should assist national policy makers in establishing a standard of basic health care for every American;

NOW THEREFORE, BE IT RESOLVED, that the shareholders request the Brunswick Corporation to establish a committee of the board to prepare a report to the shareholders which will 1) compare the health standards, methods of administration, costs and financing of health care plans in all countries (including the United States) where the company has subsidiaries or business offices; and 2) describe to the shareholders any aspects of governmental policy affecting those plans which should be included in the development of a national health insurance plan in the United States. The report shall be produced at a reasonable cost, shall exclude proprietary information and shall be made available to shareholders within six months of the annual meeting.

Holtzman Aff. in Supp., Exh. B.

On December 6, 1991 Brunswick advised Ms. Holtzman that it intended to omit the Proposal from its proxy statement and form of proxy submitted to the Securities and Exchange Commission ("SEC") and enclosed a copy of its counsel's letter to the SEC of the same date requesting the issuance of a "no-action letter" on the grounds that the Proposal contravened SEC Rules 14a–8(c)(4) and 14a–8(c)(7).

In its December 6, 1991 letter to the SEC, counsel for Brunswick stated that the Proposal need not be presented since it dealt with a matter "relating to the conduct of the ordinary business operations of the company," Rule 14a–8(c)(7), and because the "proposal is designed to result in a benefit to the proponent which is not shared by the stockholders of Brunswick Corporation at large," Rule 14a–8(c)(4). On December 31, 1991, NYCERS's Deputy Counsel Dodell, by letter to the General Counsel of the SEC, took particular issue with the former reason and, although acknowledging SEC precedent permitting corporations to exclude shareholder proposals relating to national health care from their proxy statements, urged a reversal of this precedent since the "significant policy issue" of "creating a national health care plan" was involved. Ms. Dodell also took the position that the Proposal was not designed to further a unique personal interest or benefit of NYCERS contrary to Rule 14a–8(c)(4) because "all Brunswick shareholders may benefit from the adoption of such a plan." The Proposal, Ms. Dodell maintained, would cause Brunswick to assist in the debate to reform the United States health care system.

Brunswick's counsel responded by letter dated January 9, 1992 to the General Counsel of the SEC, suggesting that the Proposal was designed to cause Brunswick to fund and carry out a public interest research project for the Comptroller of New York City, who was in a position to undertake the task herself. Ms. Dodell responded on January 10, 1991 that the SEC should reverse its policy because the Proposal would benefit all shareholders as they might benefit from the reduced cost of health care if a national health care plan was developed.

On February 10, 1992 the Chief Counsel of the SEC issued a no-action letter on the basis that "the proposal is directed at involving the Company in the political or legislative process relating to an aspect of the Company's operations" in violation of SEC Rule 14a–8(c)(7). The SEC staff did not address the alternative bases relied upon by Brunswick.

On March 10, 1992, shortly before Brunswick planned to mail out its proxy materials on March 19 or 25, 1992, NYCERS filed this action for injunctive relief and moved by order to show cause, claiming that Brunswick's decision to omit the Proposal from its proxy materials violated § 14(a) of

the Securities and Exchange Act of 1934 and SEC Rule 14a–8. The motion was heard on March 18, 1992.

## DISCUSSION

A party seeking a preliminary injunction must establish a) irreparable harm and (b) either a substantial likelihood of success on the merits, or sufficiently serious questions going to the merits to make them fair grounds for litigation together with a balance of hardships tipping decidedly toward the moving party. *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985).

Section 14(a) of the Securities and Exchange Act of 1934 authorizes the SEC to issue rules governing the proxy process "as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a). In furtherance of this authorization the SEC has adopted SEC Rule 14a–8, requiring corporations under certain conditions to include in their proxy materials, in addition to management's proposals, proposals offered by their shareholders. Under Rule 14a–8, management may omit a proposal from a proxy statement if the proposal deals with a matter relating to the conduct of the ordinary business operations of the corporation (Rule 14a–8(c)(7)), if the proposal is designed to further a personal interest not shared by security holders at large (Rule 14a–8(c)(4)), if the proposal is overly vague and misleading (Rule 14a–8(c)(3)), and if the proposal is beyond the power of the corporation to effectuate (Rule 14a–8(c)(6)). The other limitations on proposals are deemed not relevant to this opinion.

The Proposal as drafted is vague and misleading. By its terms it would require Brunswick to establish a committee that would prepare a report to the shareholders 1) comparing the health standards, methods of administration, costs, and financing of health care plans in all countries in which Brunswick has subsidiaries or business offices, and 2) describing to the shareholders any aspects of governmental policy affecting those plans which should be included in the development of a national health insurance plan in the United States.

There is no limitation on the number or size of health care plans to be studied. There is no requirement that a health care plan be one that serves employees of Brunswick. When it was suggested by the Court at oral argument that such a study might be beyond the power of the Defendant to effectuate, in violation of Rule 14a–8(c)(6), Plaintiff's counsel sought to interpret the Proposal as limited to health care systems used by the Defendant. Thus the Proposal as drafted lacks the clarity required of a proper shareholder proposal. Shareholders are entitled to know precisely the breadth of the proposal on which they are asked to vote. *See E.I. du Pont de Nemours & Co.,* 1992 WL 32307 (SEC Feb. 13, 1992). Similarly at pages 4, 14, and 16 of NYCERS's Memorandum of Law in Support of Motion for Preliminary Injunction, Plaintiff states that the Proposal asks Brunswick to assess the impact of proposals for health care reform on the company's business. Nowhere does the Proposal request Brunswick to study the impact of health care costs or health care reform proposals on the company or its business. The entire thrust of the Proposal is the development of a national health insurance plan in the United States. In light of these interpretations placed on the Proposal by NYCERS's counsel it can only be concluded that the Proposal violates Rule 14a–8(c)(3) as vague and misleading, and Rule 14a–8(c)(6) as beyond the power of the Company to effectuate.

The no-action letter issued by the SEC to the Defendant permitted it to exclude the Proposal from the proxy materials for the annual meeting for a different reason. It based its decision on Rule 14a–8(c)(7) because "the proposal is directed at involving the Company in the political or legislative process relating to an aspect of the Company's operations."

The purpose of Rule 14a–8(c)(7), which permits a proposal to be excluded from proxy materials "[i]f the proposal deals with a matter relating to the conduct of the ordinary business of the registrant," is to limit the shareholders from seeking to "assert the power to dictate the minutiae of

daily business decisions." *Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531 (D.C.Cir.1990). This section of Rule 14a–8 gives recognition to the principle of corporate law that management of the business of a corporation is vested in its Board of Directors.

Consistent with this recognition, the SEC has permitted the exclusion of various proposals relating to health care, e.g., a proposal to eliminate medical benefits to employees for voluntary abortions, and a proposal to institute a medical and dental plan for all employees and their dependents. The SEC has recently issued five no-action letters on proposals similar to NYCERS's Proposal, upholding the exclusion of each proposal: The Journal Company, International Business Machines Corporation, Knight–Ridder, Inc., Tribune Company, and Pepsico, Inc. The Court should defer to the SEC's interpretation of its Rule. *See Brooks v. Standard Oil Co.*, 308 F.Supp. 810, 813 (S.D.N.Y.1969) (Lasker, J.).

It is true as argued by Plaintiff that shareholders are permitted under § 14(a) and Rule 14a–8 to vote on major questions of corporate policy, *Philip Morris*, 1990 WL 286063 (SEC Feb. 26, 1990); *Pacific Telesis Group*, 1989 WL 245523 (SEC Feb. 2, 1989), but the Proposal as adopted is not limited to corporate policy but seeks to cause the corporation to form national policy. As admirable as Plaintiff's objectives may be, there is no precedent to support such a Proposal, and the Court will not require the Defendant to include such a Proposal in its proxy materials.

Brunswick also argues that it should not be required to include the Proposal in the proxy materials because it is designed to further NYCERS's personal interest in national health care reform. It points out that in its December 21, 1991 letter to the SEC, NYCERS noted its "fiduciary responsibility" to the pensioners whose funds it manages, pensioners who are interested in the maintenance of their health care benefits. Such an interest, Brunswick argues, is a unique personal interest of NYCERS not generally shared by other shareholders at large. It argues that the test of such a proposal must depend on whether the proposal is designed to produce a benefit to shareholders *as shareholders*. Brunswick offers no legal support for this analysis and in the absence of such precedent the Court declines to utilize such a test.

The motion of Plaintiff for a preliminary injunction is denied. Counsel are to attend a conference in this Court on April 27, 1992 at 9:00 a.m. in courtroom 302 to determine what further action if any is required.

IT IS SO ORDERED.