NEW YORK CITY EMPLOYEES' RE-TIREMENT SYSTEM; United States Trust Company; and Women's Division of the Board of Global Ministries of the United Methodist Church, Plaintiffs–Appellees,

v.

SECURITIES AND EXCHANGE COMMISSION, Defendant–Appellant.

No. 196, Docket 94–6072.

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1994.

Decided Jan. 3, 1995.

---

8

Jacob H. Stillman, Assoc. Gen. Counsel, S.E.C., Washington, DC (Paul Gonson, Sol., Simon M. Lorne, Gen. Counsel, Lucinda O. McConathy, Asst. Gen. Counsel, and Christopher Paik, Senior Counsel, S.E.C., of counsel), for defendant-appellant.

Margaret G. King, Corp. Counsel's Office, New York City (Paul A. Crotty, Corp. Counsel for the City of New York and Barry P. Schwartz, Corp. Counsel's Office, of counsel), for plaintiff-appellee New York City Employees' Retirement System.

Paul M. Neuhauser, Iowa City, IA (Hilary B. Klein, of counsel), for plaintiffs-appellees Women's Div. of the Bd. of Global Ministries of the United Methodist Church and U.S. Trust Co.

Joseph P. Galda, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, Daniel J. Popeo, and Paul D. Kamenar, Washington, DC, for amicus curiae Washington Legal Foundation.

William M. Tartikoff and Beth-Ann Roth, Bethesda, MD, for amicus curiae Calvert Group, Ltd.

Before: WALKER, McLAUGHLIN and JACOBS, Circuit Judges.

McLAUGHLIN, Circuit Judge:

The plaintiffs, New York City Employees' Retirement System ("NYCERS") and two other institutional investors, sued the Securities and Exchange Commission ("SEC") in the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*), to enjoin the SEC from violating section 553(b) of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 553(b). The lawsuit stemmed from an SEC "no-action" letter, in which the SEC announced that it was changing its interpretation of SEC Rule 14a–8(c)(7). *See* 17 C.F.R. § 240.14a–8(c)(7) (1994) ("Rule 14a–8(c)(7)"). The plaintiffs claimed that the old interpretation of Rule 14a–8(c)(7) was subjected to notice and comment before it was adopted, and, accordingly, the new interpretation had to follow the same procedures. The plaintiffs also challenged the new interpretation as arbitrary and capricious.

The district court, on plaintiffs' motion for summary judgment determined that the SEC's no-action letter announced a "legislative rule," as that term is used in the APA. *See NYCERS v. SEC*, 843 F.Supp. 858 (S.D.N.Y.1994). The court therefore enjoined the SEC from issuing any no-action letter inconsistent with the SEC's previous understanding of Rule 14a–8(c)(7) without first submitting the rule for notice and comment. The district court saw no need to address whether the rule was arbitrary and capricious.

The SEC now appeals, arguing that the no-action letter was "interpretive," not legislative, and, as such, was not subject to the APA's notice and comment requirements. The SEC also urges us to dismiss the arbitrary and capricious claim because the plaintiffs may obtain this relief without suing the agency.

We agree with the SEC. Accordingly, we vacate the injunction, reverse the order granting summary judgment, and dismiss the claim that the letter was arbitrary and capricious.

## BACKGROUND

All three plaintiffs are major institutional shareholders, sharing a common sensitivity to their social responsibility. After investing in a company, the plaintiffs regularly use their shareholder status as a bully pulpit to promote non-discriminatory policies in the workplace.

The plaintiffs' powder and shot are proxy materials and shareholder proposals. When the plaintiffs want to change a company policy, they put their idea up for a shareholder vote by submitting a shareholder proposal to the board of directors. Then, the plaintiffs ask the board to include the proposal in the proxy materials that are sent to all shareholders before meetings.

In 1991, Cracker Barrel Old Country Store, Inc. attracted the plaintiffs' ire. That January, Cracker Barrel, a restaurant chain, issued a press release:

> Cracker Barrel is founded upon a concept of traditional American values, quality in all we do, and a philosophy of 100% guest satisfaction. It is inconsistent with our concept and values, and is perceived to be inconsistent with those of our customer base, to continue to employ individuals ... whose sexual preferences fail to demonstrate normal heterosexual values which have been the foundation of families in our society.

Upon the heels of this release, Cracker Barrel fired several gay employees.

Cracker Barrel's actions triggered public protests, boycotts, and negative media coverage. To defuse the furor, Cracker Barrel rescinded the anti-gay policy. It did not, however, rehire the former employees. Neither did it expressly include "sexual orientation" among the inappropriate criteria for employment decisions in its published anti-discrimination policy.

In November 1991, plaintiff NYCERS, a Cracker Barrel shareholder, proposed to Cracker Barrel's board of directors that the company expressly prohibit discrimination on the basis of sexual orientation. NYCERS called for a shareholder vote and asked Cracker Barrel to include the proposal in the

proxy materials for the 1992 annual shareholder meeting.

Cracker Barrel wanted no part of this proposal, and did not even want to include it in the proxy materials. Under Rule 14a–8, however, Cracker Barrel had to include the proposal in the proxy materials unless the proposal dealt with "ordinary business operations." *See* Rule 14a–8(c)(7). The construction of that term lies at the heart of the controversy, and it requires some exegesis.

In 1976, the SEC proposed to revise various parts of Rule 14a–8. It wanted to tighten the exception for "ordinary business operations" in subsection (c)(7)—then subsection (c)(5)—so that only proposals regarding "routine, day to day matters relating to the conduct of the ordinary business operations" could be excluded from proxy materials. *See Proposals by Security Holders: Notice of Proposed Amendments to Rule*, Exchange Act Release No. 12,598 (July 7, 1976), 41 Fed.Reg. 29,982, 29,984 (the "Proposed Amendments"). This way, the SEC believed, corporations could not exclude proposals regarding policies important to shareholders just because they also happened to concern "ordinary business operations."

After reviewing comments on the proposed revision, the SEC decided not to change the subsection in any material way. *See Adoption of Amendments Relating to Proposals by Security Holders*, Exchange Act Release No. 12,999 (Nov. 22, 1976), 41 Fed.Reg. 52,994, 52,997 (1976) (the "1976 Adoption"). Instead, the 1976 Adoption indicated that the Rule would retain the historical "ordinary business operations" language, but that the SEC staff would thereafter interpret it so that corporations could not exclude proposals regarding "matters which have significant policy, economic or other implications inherent in them." *Id.*

Befuddled by the 1976 Adoption, Cracker Barrel wrote to the SEC's Corporation Finance Division (the "Division") in 1991, to find out whether the SEC would bring an enforcement action if Cracker Barrel left NYCERS's sexual orientation proposal out of the proxy materials for the 1992 meeting. The letter argued that Rule 14a–8(c)(7) allowed Cracker Barrel to omit NYCERS's proposal because it related to employment policies, and these fell within the ambit of "ordinary business operations."

NYCERS wrote its own letter to the Division, relying upon the "significant policy implications" language in the 1976 Adoption. Contending that employment discrimination is an important policy issue, NYCERS argued that Cracker Barrel had no right to omit NYCERS's proposal.

In October 1992, the Division issued a no-action letter, stating that the SEC would not bring an enforcement action against Cracker Barrel. *See Cracker Barrel Old Country Store, Inc.*, SEC No–Action Letter, 1992 WL 289095 (SEC) (October 13, 1992) (the "Cracker Barrel no-action letter"). The letter conceded that the Division's staff had already experienced difficulty trying to discern when a proposal involved significant policy issues. It also acknowledged that the opaqueness of the standard had led to decisions "characterized by many as tenuous, without substance and effectively nullifying the application of the ordinary business exclusion to employment related proposals." The letter continued:

> The Division has reconsidered the application of Rule 14a–8(c)(7) to employment-related proposals in light of these concerns and the staff's experience with these proposals in recent years. As a result, the Division has determined that the fact that a shareholder proposal concerning a company's employment policies and practices for the general workforce is tied to a social issue will no longer be viewed as removing the proposal from the realm of ordinary business operations of the registrant. Rather, determinations with respect to any such proposals are properly governed by the employment-based nature of the proposal.

*Id.* at *18. NYCERS petitioned the SEC to reverse the *Cracker Barrel* no-action letter; the SEC reviewed it, and affirmed.

NYCERS and two other institutional investors feared that the *Cracker Barrel* no-action letter would frustrate any future attempts by them to change employment policies. So, they three sued the SEC in the

Southern District of New York, seeking a declaration that the no-action letter's jettison of the "significant policy implications" rule was invalid because: (1) the SEC did not submit it for notice and comment, as required by section 553 of the APA; and (2) it was arbitrary and capricious. NYCERS also petitioned the court to enjoin the SEC from following the policy announced in the no-action letter.

The SEC moved for summary judgment dismissing the complaint, arguing that the *Cracker Barrel* no-action letter (1) was not judicially reviewable; (2) was not subject to APA notice and comment requirements; and (3) was neither arbitrary nor capricious. The plaintiffs cross-moved for summary judgment.

The district court denied the SEC's motion, granted the plaintiffs' motion, and entered judgment for plaintiffs. Acknowledging that agency decisions not to prosecute are not judicially reviewable, the court noted that NYCERS claimed the SEC violated the APA itself, not that the SEC wrongly abstained from enforcing Rule 14a–8. Thus, the court found that it had jurisdiction to hear the plaintiffs' claims.

On the merits, the district court ruled that the SEC had violated the APA by abandoning the "significant policy implications" rule without providing notice and comment. The court found, first, that the statement in the *Cracker Barrel* no-action letter was a "rule" as defined by section 551(4) of the APA. The court then characterized the letter as a "legislative," as opposed to "interpretive," rule because it amended the 1976 Adoption's "significant policy implications" rule, which was promulgated after notice and comment procedures. Since the APA requires that legislative rules undergo notice and comment before adoption, the district court ruled that the statement in the no-action letter was invalid. Having done so, the court did not find it necessary to decide whether the rule was arbitrary and capricious.

The district court granted the plaintiffs' request for an injunction, and barred the SEC from issuing any no-action letter inconsistent with the "significant policy implications" rule set out in the 1976 Adoption, unless the agency changed that rule by notice and comment.

The SEC appeals.

## DISCUSSION

Attacking the district court's holding that the *Cracker Barrel* no-action letter announced a legislative rule, the SEC contends that the rule was interpretive only, and, thus, was not subject to the APA's notice and comment requirements. The SEC also maintains that the plaintiffs may not challenge the no-action letter as arbitrary and capricious because adequate alternative remedies are available.

### I. *Notice and comment*

■ Preliminarily, we must consider whether we have jurisdiction to hear NYCERS's claim that the no-action letter violated the APA's notice and comment procedures. It is true that agency decisions not to prosecute are *not* reviewable because they are "generally committed to an agency's absolute discretion." *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). But it is equally true that "[a] person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

As the district court recognized, the marrow of NYCERS's claim is that the SEC announced a new rule without following the statutory notice and comment procedures. We therefore have jurisdiction under section 702 to hear the plaintiffs' notice and comment claim. That said, we turn to the merits.

Not all agency issuances are subject to notice and comment requirements. Notice and comment are required only if the statement is (1) a rule, and (2) legislative, as opposed to interpretive. *See* 5 U.S.C. § 553(b)(1)–(3), (c); *White v. Shalala,* 7 F.3d 296, 303 (2d Cir.1993).

A "rule," under the APA, is statutorily defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement,

interpret, or prescribe law or policy." *Id.* § 551(4). Under this sweeping definition, the *Cracker Barrel* no-action letter's statement that the SEC would no longer follow the "significant policy implications" exception was a rule: it stated generally that the Division staff was making a sea change and that it was abandoning its former policy regarding proxy inclusion requirements.

■ There are two types of rules, legislative and interpretive. Legislative rules are those that "create new law, rights, or duties, in what amounts to a legislative act." *White,* 7 F.3d at 303. Legislative rules have the force of law. *See Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). Interpretive rules, on the other hand, do not create rights, but merely "clarify an existing statute or regulation." *White,* 7 F.3d at 303. Since they only clarify existing law, interpretive rules need not go through notice and comment. 5 U.S.C. § 553(b)(3)(A). These rules do not have force of law, though they are entitled to deference from the courts. *Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9.

■ To divine the nature of the *Cracker Barrel* rule, it is helpful to understand the nature of no-action letters generally. The no-action process works as follows: Whenever a corporation decides to exclude a shareholder proposal from its proxy materials, it "shall file" a letter with the Division explaining the legal basis for its decision. *See* Rule 14a–8(d)(3). If the Division staff agrees that the proposal is excludable, it may issue a no-action letter, stating that, based on the facts presented by the corporation, the staff will not recommend that the SEC sue the corporation for violating Rule 14a–8. *See* Securities Act Release No. 6253 (Oct. 28, 1980), 45 Fed.Reg. 72644 n. 2 (1980); Eric A. Welter, Note, *The Shareholder Proposal Rule: A Change to Certainty,* 60 Geo. Wash.L.Rev.1980, 2002 (1992). The no-action letter, however, is an informal response, and does not amount to an official statement of the SEC's views. *See* 17 C.F.R. § 202.1(d).

No-action letters are deemed interpretive because they do not impose or fix a legal relationship upon any of the parties. *See*

*Amalgamated Clothing & Textile Workers Union v. SEC,* 15 F.3d 254, 257 (2d Cir.1994) (*"ACTWU"*). *Accord Roosevelt v. E.I. Du Pont de Nemours & Co.,* 958 F.2d 416, 427 n. 19 (D.C.Cir.1992) (no-action letters concerning shareholder proposals are neither agency adjudication nor rule-making). In *ACTWU,* a shareholder sought judicial review of the SEC's affirmance of the Division's decision, published in a no-action letter, not to prosecute a Rule 14a–8 violation. In holding that federal jurisdiction did not exist, *ACTWU* ruled that, even when affirmed by the SEC, staff no-action letters are interpretive because they do not bind the SEC, the parties, or the courts. *See id.* In effect, they bind no one.

■ Under *ACTWU,* the *Cracker Barrel* no-action letter is interpretive because it does not create or destroy any legal rights. The *casus belli* of the *Cracker Barrel* letter is the statement that the SEC staff would no longer distinguish shareholder proposals concerning employment-related social issues from those involving ordinary business operations. *See Cracker Barrel* no-action letter at *18. But this interpretation binds no one: The SEC may still bring an enforcement action against Cracker Barrel (or any other company) based on its failure to include a proposal regarding an employment-related social issue. *See id.* As the SEC has noted, "no-action . . . responses by the staff are subject to reconsideration and should not be regarded as precedents binding on the [SEC]." Securities Act Release No. 5098 (Oct. 7, 1970), 35 Fed.Reg. 17,779 (1970). *Accord Board of Trade of City of Chicago v. SEC,* 883 F.2d 525, 529 (7th Cir.1989) (the Division's staff "could change [its] mind tomorrow, or the Commissioners might elect to proceed no matter what the [staff] recommends").

The *Cracker Barrel* no-action letter certainly does not bind the parties. "The SEC itself has acknowledged that no-action letters have no binding effect on the parties addressed in the letters." *ACTWU,* 15 F.3d at 257. *ACTWU* recognized that "[e]ven if the SEC had taken the position that the proposal should have been included in the proxy mate-

rials, [the company] would not have been required to include it." *Id.* And, as the SEC itself has explained, the SEC "and its staff do not purport in any way to issue 'rulings' or 'decisions' on shareholder proposals management indicates it intends to omit, and they do not adjudicate the merits of management's posture concerning such a proposal." *Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals,* Exchange Act Rel. No. 12,599 (July 7, 1976), in [1976–77 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 80,635 at 86,604 (1976). Thus, a no-action letter does not affect a shareholder's right "to institute a private action with respect to the management's intention to omit the proposal from its proxy materials." *Id.*

Finally, the *Cracker Barrel* no-action letter does not bind the courts. Should NYCERS bring a federal suit against Cracker Barrel under Rule 14a–8, the court may find a Rule 14a–8 violation despite the no-action letter. While the court would treat the no-action letter as persuasive, the court need not give it the same high level of deference that is accorded formal policy statements or rule-making orders. *See ACTWU,* 15 F.3d at 257 & n. 3. Indeed, at least one district court has found a Rule 14a–8 violation and then issued a preliminary injunction in the face of an SEC no-action letter opining to the contrary. *See NYCERS v. American Brands, Inc.,* 634 F.Supp. 1382, 1392–93 (S.D.N.Y. 1986). Even when district courts have ruled in accord with no-action letters, they almost always have analyzed the issues independently of the letters. *See, e.g., NYCERS v. Brunswick Corp.,* 789 F.Supp. 144, 146 (S.D.N.Y.1992) (finding no violation, but on grounds additional to those asserted in no-action letter); *Sheinberg v. Fluor Corp.,* 514 F.Supp. 133, 138 (S.D.N.Y.1981) (plaintiff "is hard pressed to overcome the SEC's contrary position" in a no-action letter without asserting contrary authority).

Thus, insofar as the *Cracker Barrel* no-action letter does not affix any legal relationships, it is an interpretive rule. As the district court noted, however, this is not a garden variety no-action letter. While most no-action letters merely state that the Division staff will not recommend an enforcement ac-

tion, the *Cracker Barrel* no-action letter went further: it expressly abandoned a previous SEC rule. The district court, relying chiefly upon *American Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106 (D.C.Cir.1993), concluded that renouncing the former SEC rule transubstantiated the no-action letter from interpretive to legislative. We do not agree.

*American Mining Congress* addressed whether an agency's policy position letters are legislative or interpretive. In finding these letters interpretive, *American Mining Congress* stated that a rule is legislative if it has "legal effect." *Id.* at 1112. *American Mining Congress* suggested that a rule has legal effect if: (1) in the absence of the rule, no legislative basis would exist for an enforcement action; (2) "the agency has published the rule in the Code of Federal Regulations"; (3) the agency "explicitly invoked its general legislative authority" to pass the rule; or (4) "the rule effectively amends a prior legislative rule." *Id.* at 1112.

The rule enunciated in the *Cracker Barrel* no-action letter manifestly does not fit in any of the first three *American Mining Congress* categories: (1) it does not create a basis for an SEC enforcement action; (2) the SEC did not publish the letter in the C.F.R.; and (3) the SEC did not expressly invoke legislative authority.

The fourth factor—whether the rule effectively amends a prior legislative rule—requires deeper analysis. True, the *Cracker Barrel* no-action letter abandoned the understanding of "ordinary business operations" espoused in the 1976 Adoption. And, since the "significant policy implications" rule announced in the 1976 Adoption provides a basis for SEC enforcement actions, this part of the 1976 Adoption was a legislative rule.

The district court surmised from these facts that the *Cracker Barrel* no-action letter "effectively amended" a legislative rule (*viz.,* the legislative portion of the 1976 Adoption), and was thus itself legislative. This conclusion is untenable in light of *ACTWU.* As *ACTWU* held, no-action letters are nonbinding statements of the SEC's intent not to prosecute a potential rule violation; they do not oblige or prevent action by the SEC, the parties, or the courts. *See ACTWU,* 15 F.3d

at 257. *Accord Roosevelt,* 958 F.2d at 427 n. 19 (no-action letters concerning shareholder proposals are neither agency adjudication nor rulemaking). A necessary corollary of this proposition is that rules announced in no-action letters also have no binding authority. Thus, the *Cracker Barrel* no-action letter did not effectively amend the 1976 Adoption within the meaning of *American Mining Congress,* and did not contain a legislative rule. Rather, the letter merely expressed the view of the Division's staff that it lacks the necessary expertise in identifying issues as having "significant policy implications," and that the staff does not expect to allocate its limited resources to making such subjective determinations.

In so holding, we are mindful of the plaintiffs' warning that the SEC might be able to skirt the entire notice and comment process by using no-action letters to amend legislative rules. We are not persuaded by their prophecy of doom. As *American Mining Congress* wisely observed, "[a] non-legislative rule's capacity to have a binding effect is limited in practice by the fact that agency personnel at every level act under the shadow of judicial review." *American Mining Congress,* 995 F.2d at 1111. Agency rules that have not undergone notice and comment receive much closer scrutiny from the courts than do those that have cleared the procedural hurdles. *See id.* And, since no-action letters are informal, they receive even less deference than other interpretive rules. *See ACTWU,* 15 F.3d at 257 & n. 3. Consequently, because the *Cracker Barrel* no-action letter did not go through notice and comment, and was only an informal statement by the SEC, courts will not accord great deference to it.

Summing up: Because the *Cracker Barrel* no-action letter was not legislative, the APA did not require notice and comment. Thus, we reverse the district court's grant of summary judgment, and vacate the injunction.

## II. *Arbitrary and capricious*

NYCERS also wants us to set aside the rule announced in the *Cracker Barrel* no-action letter as arbitrary and capricious.

■ Section 706 of the APA permits a court to reverse an agency action that is arbitrary or capricious. *See* 5 U.S.C. § 706(2)(A). We may not even entertain the claim against the agency, however, if the plaintiffs have an adequate alternative legal remedy against someone else—a remedy that offers the same relief the plaintiffs seek from the agency. *See id.* § 704; *Washington Legal Foundation v. Alexander,* 984 F.2d 483, 486 (D.C.Cir.1993); *Council of and for the Blind v. Regan,* 709 F.2d 1521, 1531 (D.C.Cir.1983) (in banc).

Here, the plaintiffs have an effective alternative to suing the SEC: They can sue Cracker Barrel, or any other offending company under Rule 14a–8, to enjoin the board to include their proposal in the proxy materials. In that suit, should the company offer the rule espoused in the *Cracker Barrel* no-action letter to show compliance, the plaintiffs may counter that the rule is arbitrary and capricious. If the plaintiffs prevail in that suit, they would then get all the relief they now seek from the SEC on their claim of arbitrary and capricious agency action. Thus, we dismiss this claim under section 704.

## CONCLUSION

In light of the foregoing, we vacate the injunction, reverse the order of summary judgment, and dismiss the plaintiffs' claim that the no-action letter was arbitrary and capricious.