SHWARTZ, Circuit Judge,
with whom Judge VANASKIE joins as to Part III, concurring in the judgment.
I agree with the Majority that Wal-Mart may omit Trinity’s proposal from the company’s proxy materials. I write separately, however, for two reasons. First, while I agree with my colleagues that the proposal is excludable based on the ordinary business exclusion, I believe that the test that it has fashioned for determining when an exception to this exclusion applies may remove many company actions over which shareholders should have a say from shareholder oversight. Second, I write to explain that both the ordinary business and the vagueness exclusions support exclusion of the entire proposal.[1]
*352 I
SEC Rule 14a-8 requires a public company to include a shareholder proposal “in its proxy statement ... when [the company] holds an annual or special meeting of shareholders,” 17 C.F.R. § 240.14a-8, in recognition of the fact that, “with the increased dispersion of security holdings in public companies, the proxy solicitation process rather than the shareholder’s meeting itself ha[s] become the forum for shareholder suffrage,” Proposed Amendments to Rule 14a-8, Exchange Act Release No. 19135, 1982 WL 600869, at *2 (Oct. 14, 1982) (the “1982 Proposing Release”). The rule thus “affords shareholders access to management proxy solicitations,” both “to sound out management views and to communicate with other shareholders on matters of major import.” Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 821 F.Supp. 877, 882 (S.D.N.Y.1993) (internal quotation marks, citation, and alteration omitted). Such access, however, is not unfettered. In addition to eligibility and procedural requirements, SEC Rule 14a-8 is “limited by thirteen content-based exceptions,” id., two of which Wal-Mart argues apply here: Rule 14a-8(i)(7) and Rule 14a-8(i)(3).
Rule 14a-8(i)(7) allows- a company to exclude proposals that “deal[ ] with a matter relating to the company’s ordinary business operations.” 17 C.F.R. § 240.14a-8(i)(7). The SEC has explained that the determination of whether a particular shareholder proposal implicates a company’s ordinary business operations “rests on two central considerations”: (1) whether the “subject matter” of the proposal involves “tasks ... fundamental to management’s ability to run a company on a day-to-day basis”; and (2) “the degree to which the proposal seeks to ‘micro-manage’ the company by probing too deeply into matters of a complex nature upon which shareholders ... would not be in a position to make an informed judgment.” Amendments to Rules on Shareholder Proposals, Release No. 23200, 1998 WL 254809, at *4-5 (May 21, 1998) (“1998 Adopting Release”).
There is an exception to this exclusion. Specifically, proposals “relating to” ordinary business operations “but focusing on sufficiently significant social policy issues ... generally would not be considered ex-cludable,” notwithstanding their relationship to ordinary business, “because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote.” Id. at *4. The Majority would limit proposals invoking the “significant social policy exception” to only those concerning matters that are “disengaged from the essence of’ a company’s business, Maj. Op. at 347, and reads the 1998 Adopting Release to require a proposal that focuses on a significant social policy issue to be completely “divorced from how a company approaches the nitty-gritty of its core business,” Maj. Op. at 346; see also id. (“[T]o shield its proposal from the ordinary business exclusion, a' shareholder must do more than focus its proposal on a significant policy issue; the subject matter of its proposal must ‘transcend’ the company’s ordinary business.”). In my view, this reading is inconsistent with the plain text of the 1998 Adopting Release.
The 1998 Adopting Release provides that, to avoid running afoul of the ordinary business exclusion, a proposal “relating to” a company’s ordinary business must “focus[] on” a “sufficiently significant social policy issue.” 19,98 Adopting Release, 1998 WL 254809,"'at *4. If it does, “it generally would not be considered excluda- *353 ble, because the proposal] would transcend ... day-to-day business matters.” Id. As this passage makes clear, whether a proposal focuses on an issue of social policy that is sufficiently significant is not separate and distinct from whether the proposal transcends a company’s ordinary business. Rather, a proposal is sufficiently significant “because” it transcends day-to-day business matters. Id. Thus, the SEC treats the significance and transcendence concepts as interrelated, rather than independent.
The 1998 Adopting Release also does not require that a proposal be “disengaged from the essence of’ a company’s business, Maj. Op. at 347, such that a company is insulated from any submission relating to the “crafting [of] a product mix that satisfies consumer demand,” Maj. Op. at 347. Indeed, the 1998 Adopting Release expressly permits a shareholder to submit a proposal -that relates directly to ordinary business matters, including “decisions on production quality and quantity, and the retention of suppliers,” so long as it “focus[es] on” an issue of “sufficiently significant social policy.” 1998 Adopting Release, 1998 WL 254809, at *4 (acknowledging that “[ejertain tasks,” including those related to production and suppliers, “are so fundamental to management’s ability to run a company on a day-to-day basis” that they are not “subject to direct shareholder oversight,” but recognizing that “proposals relating to such matters but focusing on sufficiently significant social policy issues” generally are not ex-cludable). Thus, to “transcend” ordinary business, as that term is used in the 1998 Adopting Release, a proposal need not be divorced from ordinary business, as the Majority proposes, but instead must focus on a policy issue that in some “transcendent]” way trumps ordinary business in importance. See id.; see also Adoption of Amendments Relating to Proposals by Security Holders, Release No. 12999, 1976 WL 160347, at *11 (Nov. 22, 1976) (noting that proposals including “certain matters which have significant policy, economic, or other implications,” like “the economic and safety considerations attendant to nu[cl]ear power plants,” are “of such magnitude” that they should be “considered beyond the realm of an issuer’s ordinary business operations,” despite their relationship to such operations).
In addition to conflicting with SEC guidance, the Majority’s test for the “significant social policy exception” to the ordinary business exclusion is inconsistent with the purpose of § 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (the “Exchange Act”), and Rule 14a-8. When Congress enacted the Exchange Act, it sought to ensure “fair corporate suffrage.” J.I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). One way such suffrage is protected is through accurate proxy solicitations. Id. Congress authorized the SEC to generate rules that would advance this goal. See 15 U.S.C. § 78n. To this end, it promulgated Rule 14 to provide guidelines for shareholder proposals, including those that raise social issues. As the Commission noted in the 1998 Adopting Release, “shareholder proposals on social issues may improve investor confidence in the securities markets by providing investors with a sense that as shareholders they have a means to express their views to the management of the companies in which they invest.” 1998 Adopting Release, 1998 WL 254809, at *19.
The Majority’s test, insofar as it practically gives companies carte blanche to exclude any proposal raising social policy issues that are directly related to core business operations,- undermines the principle of fair corporate suffrage animating Rule 14a-8: shareholders’ “ability to exercise their right — some would say their *354 duty — to control the important decisions which affect them in their capacity as ... owners of [a], corporation.” Med. Comm. for Human Rights v. SEC, 432 F.2d 659, 681-82 (D.C.Cir.1970) (footnote omitted). Section 14(a) of the Exchange Act ensures that “[a] corporation is run for the benefit of its stockholders and not for that of its managers,” SEC v. Transamerica Corp., 163 F.2d 511, 517 (3d Cir.1947), and “Congress intended by its enactment of [§] 14 ... to give true vitality to the concept of corporate democracy,” Med. Comm. for Human Rights, 432 F.2d at 676. Permitting shareholders to vote on important social issues, including those that may be closely related to a company’s ordinary business, is consistent with these principles, and I would not interpret the ordinary business exclusion to prohibit it.
II
All that said, Trinity’s proposal as written is excludable under the ordinary business exclusion because it lacks the focus needed to trigger the “significant social policy” exception. To qualify for this exception, Trinity’s proposal must focus on a significant policy issue. Trinity’s proposal asks the Board to amend the Committee charter to require that it create policies and standards for determining whether Wal-Mart should sell a product that: (1) “especially endangers public safety and well-being”; (2) “has the substantial potential to impair” Wal-Mart’s reputation;, and/or (3) “would reasonably be considered by many to be offensive to the family and community values integral to” Wal-Mart’s brand. J.A. 268. Although the proposal states that it is for “determining whether or not [Wal-Mart] should sell guns equipped with magazines holding more than ten rounds of ammunition ... and [for] balancing the benefits of selling such guns against thé risk that these sales pose to the public and to [Wal-Mart’s] reputation and brand value,” J.A. 268, the full text shows that it is not directed solely to Wal-Mart’s sale of guns.
The proposal has three separate components. The “public safety” component of the proposal could cover many products, especially in light of the amount of products Wal-Mart offers, and thus might require Wal-Mart to develop policies and standards for thousands of goods. While Wal-Mart’s sale of guns with high-capacity magazines may raise a significant social policy issue concerning public - safety, not all products that may fall within the proposal do so. Thus, while the first component of Trinity’s proposal may raise a significant issue of social policy, insofar as it touches on the sale of guns equipped with high capacity magazines, we cannot say that the proposal as a whole “focus[es] on” such an issue. 1998 Adopting Release, 1998 WL 254809, at *4. Accordingly, Trinity may not avail itself of the “significant social policy exception” to the ordinary business exclusion.
Similarly, the second and third components of the proposal could cover many products. They are also problematic for other reasons. The second component seeks standards for determining whether Wal-Mart should sell a product that may impair the company’s reputation. How Wal-Mart would like others to view it is a unique company interest, and while certainly important to shareholders seeking a return on their investment, it is not of broad societal concern. The third component, which asks the Board to consider whether the sale of a product would impact its brand, also focuses on matters of interest to the company but not society at large. Thus, these components cover matters relating to Wal-Mart’s ordinary business operations, do not present a social policy issue, and render the entire proposal excludable.
*355 HI
There is an additional problem with the third component of the proposal: it is vague and thus excludable under Rule 14a — 8(i)(3). Rule 14a — 8(i)(3) permits a company to exclude shareholder proposals that are “so vague and ambiguous that the issuer and security holders would not be able to determine what action the proposal is contemplating,” 1982 Proposing Release, 1982 WL 600869, at *13. The rationale for excluding a shareholder proposal that is “vague and ambiguous” is twofold: (1) shareholders are entitled to know the breadth of the proposal on which they are asked to vote; and (2) the company must be able to comprehend what actions or measures the proposal requires of it. See Dyer v. SEC, 287 F.2d 773, 781 (8th Cir.1961); N.Y.C. Emps. Ret. Sys. v. Brunswick, 789 F.Supp. 144, 146 (S.D.N.Y.1992).
As previously stated, the third component of the proposal that asks the Committee to formulate policies and standards for the sale of products that “would reasonably be considered by many to be offensive to the family and community values integral to” Wal-Mart’s brand. J.A. 268. While Trinity argues that this component simply asks the Committee to consider whether a product may negatively impact its brand, the proposal, as written, measures that impact based upon what “many” view as “offensive” to “family and community values.” Trinity attempts to link these terms back to what Wal-Mart has said about its values, including the “Save Money, Live Better” tag line, but these buzz words fail to provide any concrete guidance as to what constitutes “many” or what “family values” should be considered. Thus, this component of the proposal does not inform the shareholders of the breadth of the subject on which they would be asked to vote nor does it make clear what the Company would be required to do if it were adopted. For this reason, the proposal is also excludable under Rule 14a-8(i)(3).
IV
I therefore concur in the judgment.

. Trinity declined to omit any component of the proposal, Tr. of Oral Arg. at 39-40, and thus sought approval of the proposal in its entirety. Accordingly, each component of the *352 proposal must be nonexcludable for it to comply with SEC Rule 14a-8.