**C.L. GRIMES, Appellant**

v.

**CENTERIOR ENERGY CORPORATION.**

**No. 89–7053.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1990.

Decided July 27, 1990.

Thaddeus Holt, Washington, D.C., for appellant.

Scott T. Kragie, with whom Donald T. Bucklin, Washington, D.C., was on the brief, for appellee.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Mr. C.L. Grimes, a shareholder of the Centerior Energy Corporation, seeks to compel Centerior to include a proposed amendment to its articles of incorporation in its proxy materials, claiming that it is required to do so by Securities and Exchange Commission Rule 14a–8. Grimes appeals the district court's dismissal of his complaint. We find that the district court correctly determined that Grimes's proposal dealt with a matter relating to the conduct of Centerior's ordinary business operations and thus could be omitted from the proxy materials under an exemption to Rule 14a–8. We also hold that the failure of the proxy materials to apprise shareholders that Grimes would offer his proposal at the forthcoming shareholders' meeting did

not render them misleading in violation of Rule 14a–9.

## I. BACKGROUND

Centerior is an Ohio corporation whose shares are traded on a national securities exchange. It owns two Ohio public utilities, The Cleveland Electric Illuminating Company and The Toledo Edison Company, which generate, transmit, and distribute electric power in northern Ohio and are regulated by the Public Utilities Commission of Ohio. At the time he initiated this suit, Grimes owned 300,000 shares of Centerior's common stock, worth approximately $4.8 million. Centerior's articles of incorporation and by-laws vest sole authority to make capital expenditures in its board of directors.

In October 1988, Grimes sent Centerior a proposed amendment to its articles of incorporation and a supporting statement, requesting that they be included in the proxy materials distributed for action at the next shareholders' meeting. The proposed amendment provides as follows:

> The Corporation (or in the aggregate any combination of the Corporation and/or its subsidiaries) shall not expend in any calendar year any monies by way of capital or construction expenditures in excess of the cash amount paid to the common shareholders as dividends in the preceeding [sic] calendar year, without the formal prior consent of the common shareholders in each instance.

Letter from C.L. Grimes to Richard Miller (Oct. 5, 1988).

Rule 14a–8 of the Securities and Exchange Commission requires Centerior to include in its proxy statement any proposal submitted for action by a shareholder unless it falls within one of thirteen exemptions, three of which are invoked by Centerior. See 17 C.F.R. § 240.14a–8 (1989). The relevant parts of Rule 14a–8 read as follows:

> (c) The [corporation] may omit a proposal and any statement in support thereof from its proxy statement ... under any of the following circumstances:
>
> ....

> (2) If the proposal, if implemented, would require the [corporation] to violate any state law....
>
> ....

> (7) If the proposal deals with a matter relating to the conduct of the ordinary business operations of the [corporation];
>
> ....

> (13) If the proposal relates to specific amounts of cash or stock dividends.

17 C.F.R. § 240.14a–8(c)(2), (7), (13) (hereinafter exemptions 2, 7, and 13, respectively). If the corporation determines that a shareholder proposal falls within one of the enumerated exemptions, it must file the proposal and its supporting statement with the SEC, together with a statement of the reasons why the proposal need not be included in the corporation's proxy materials. 17 C.F.R. § 240.14a–8(d).

Centerior determined that Grimes's proposal fell within exemptions 2, 7, and 13, and made the requisite filing with the Commission. The SEC staff issued a "no-action" letter advising Centerior that there appeared "to be some basis for" omitting Grimes's proposal from its proxy statement under exemption 2 because the proposal might result in a violation of provisions of Ohio law regulating the expenditures and dividends of public utilities. *Centerior Energy Corp.*, SEC No–Action Letter (Jan. 10, 1989) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file). The staff thus advised that it would not "recommend any enforcement action to the [SEC] if the Company omit[ted] the proposal from its proxy materials," and did not address the other exemptions asserted by Centerior. *Id.* Grimes asked the Commission to review the staff's determination, but it declined to do so.

Grimes then brought suit against Centerior, offering alternative grounds for seeking an injunction against dissemination of any proxy materials that omitted his proposal. First, Grimes asserted that the omission of his proposal would violate Rule 14a–8. Second, he contended that a failure to inform the shareholders that he would

offer a major amendment to Centerior's articles of incorporation at the shareholders' meeting would be inherently misleading in violation of SEC Rule 14a–9, 17 C.F.R. § 240.14a–9(a), which provides that proxy materials may not contain false or misleading statements or omissions with respect to any material fact. After a hearing on Grimes's motion for a preliminary injunction and Centerior's motion to dismiss, the district court found that the case presented no factual issues, denied the injunction, and dismissed the complaint. *C.L. Grimes v. Centerior Energy Corp.*, Civ. No. 89–0386, mem. op. (D.D.C. Mar. 2, 1989) ("Memorandum").

The court held that Grimes's proposal would not *require* Centerior to violate provisions of Ohio law, and thus was not exempt from inclusion under exemption 2. *Id.* at 7–9. The court went on to find, however, that Grimes's proposal was covered by exemptions 7 and 13. First, it reasoned that the proposed amendment related to the conduct of Centerior's ordinary business operations because Centerior might be required to make certain capital expenditures to ensure that its utilities met the public service obligations imposed on them by state law. *Id.* at 9–10. Second, the court concluded that the proposal related to a specific amount of dividends because if they were to avoid the need for shareholder approval, the directors would have to vote cash dividends in any given year in an amount at least equal to the proposed capital expenditures for the following year. *Id.* at 10. The court did not address Grimes's alternative claim under Rule 14a–9. Grimes brought this appeal.

## II. DISCUSSION

Grimes argues that his proposal did not deal with matters relating to the conduct of Centerior's ordinary business operations or to specific amounts of dividends and thus did not fall within either exemption 7 or 13. He contends further that even if his proposal falls within one of these exemptions, the failure to apprise shareholders of his intent to offer a major amendment at the next shareholders' meeting would render the proxy materials misleading in violation of Rule 14a–9, and that the district court erred by effectively ruling against him on this claim. Grimes thus urges us to direct the district court to order Centerior to schedule and hold a supplemental session of the 1989 shareholders' meeting and to distribute proxy materials containing his proposal. We conclude that Grimes's proposal was properly excluded from Centerior's proxy materials under exemption 7, and express no opinion as to the applicability of exemption 13. Finally, we hold that the failure to mention a properly excluded shareholder proposal in the proxy materials does not render them misleading in violation of Rule 14a–9.

### A. Exemption 7

Whether Grimes's proposal falls within exemption 7 obviously depends on the meaning of the phrase "ordinary business operations." Unfortunately, the phrase has no precise definition. When the SEC adopted Rule 14a–8(c)(7) in its current form, it explained that

> the term "ordinary business operations" has been deemed on occasion to include certain matters which have significant policy, economic or other implications inherent in them. For instance, a proposal that a utility company not construct a proposed nuclear power plant has in the past been considered excludable under [the former version of this exemption]. In retrospect, however, it seems apparent that the economic and safety considerations attendant to nuclear power plants are of such magnitude that a determination whether to construct one is not an "ordinary" business matter. Accordingly, proposals of that nature, as well as others that have major implications, will in the future be considered beyond the realm of an issuer's ordinary business operations....

Adoption of Amendments Relating to Proposals by Security Holders, 41 Fed.Reg. 52,994, 52,998 (1976). Thus, only those proposals involving "business matters that are mundane in nature and do not involve any substantial policy" considerations may be

omitted under exemption 7. *Id.* This exemption is premised on the notion that "management cannot exercise its specialized talents effectively if corporate investors assert the power to dictate the minutiae of daily business decisions." *Medical Comm. for Human Rights v. SEC,* 432 F.2d 659, 679 (D.C.Cir.1970), *vacated as moot,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

From its no-action letters, it is clear that the SEC staff typically regards proposals bearing on a company's capital expenditures as relating to ordinary business operations. *See, e.g., Florida Power & Light Co.,* SEC No–Action Letter (Jan. 18, 1983) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file) ("the determination of whether or not to ... reduce capital expenditures ... [is a] matter[ ] relating to the Company's ordinary business operations"); *Allis-Chalmers,* SEC No–Action Letter (Mar. 3, 1982) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file) (proposal to restrict capital investment to existing facilities relates to conduct of ordinary business operations); *Middle South Utilities, Inc.,* SEC No–Action Letter (Feb. 24, 1981) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file) (proposal to reduce capital expenditures relates to conduct of ordinary business operations); *General Public Utilities Corp.,* SEC No–Action Letter (Feb. 21, 1980) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file) (proposal to halt current capital expenditures for new generating capacity for all but emergency situations relates to the conduct of ordinary business operations).

In some cases, however, the SEC staff has found a proposal relating to capital expenditures to be sufficiently important to remove it from the realm of "ordinary business operations." *See Detroit Edison Co.,* SEC No–Action Letter (Feb. 13, 1980) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file) (proposal requiring that any project whose capital expenditure would exceed half a billion dollars be subject to shareholder approval did not fall within exemption 7 because "a capital expenditure of five hundred million dollars has such major implications for the future of the Company that it transcends the realm of ordinary business operations"); *see also General Public Utilities Corp.,* SEC No–Action Letter (Mar. 11, 1980) (available on WESTLAW, FSEC–NAL database, LEXIS, Fedsec library, Noact file) (proposal to focus new power plant construction on non-nuclear sources of energy not within exemption 7 because it involved "broad policy considerations beyond the Company's ordinary business").

In determining that Grimes's proposal related to the conduct of Centerior's ordinary business operations, the district court recognized that large capital expenditures might fall outside of "ordinary business operations." Memorandum at 9. The court reasoned, however, that because Ohio law imposes an obligation to make those capital expenditures that are necessary to ensure adequate service to its customers, decisions concerning such expenditures might be matters of "ordinary business." *Id.* at 10. Although the court's conclusion does not necessarily follow from the fact that Centerior regularly must make capital expenditures to fulfill its public service obligations, it is clear that it arrived at the proper result.

Under Grimes's proposal, whether shareholder approval is required for the current year's capital expenditures depends on the level of the previous year's dividends. Thus, the proposal is not limited in reach to those capital expenditure decisions involving substantial policy considerations or very large sums, but potentially extends to capital expenditures of any kind. For example, if in a given year no dividends were paid, all capital expenditure decisions for the following year, no matter how small, would have to be made by the shareholders. In such circumstances, Grimes's proposal would involve them in such minor or routine day-to-day decisions as the purchase of typewriters or the replacement of worn-out machinery. Such decisions would clearly be matters of ordinary business operations. Centerior thus properly deter-

mined that Grimes's proposal fell within exemption 7.

## B. Rule 14a–9

The district court did not address Grimes's claim that proxy materials omitting mention of the fact that he would offer a major proposal at the shareholders' meeting would be inherently misleading in violation of Rule 14a–9, thus ruling against him *sub silentio*. In support of his claim, Grimes relies on the following language from *New York City Employees' Retirement Sys. v. American Brands, Inc.*, 634 F.Supp. 1382 (S.D.N.Y.1986):

> Since a shareholder may present a proposal at the annual meeting regardless of whether the proposal is included in a proxy solicitation, the corporate circulation of proxy materials which fail to make reference to a shareholder's intention to present a *proper* proposal at the annual meeting renders the solicitation inherently misleading.

*Id.* at 1386 (emphasis added) (reasoning, from cases holding that Rule 14a–9 provides a private right of action, that such a right also exists under Rule 14a–8). *American Brands* actually stands for a somewhat different proposition than the one for which it is cited. It holds that the omission of a proposal *not* properly excludable under Rule 14a–8(c) will necessarily be misleading under Rule 14a–9, whereas the issue presented in this case is whether a proposal *properly* excluded under Rule 14a–8 must nevertheless be mentioned to avoid misleading shareholders under Rule 14a–9. Moreover, we can find no authority that does speak to this issue.

■ We note, however, that the regulations were originally designed to limit proposals to those that were proper subjects for shareholder action under applicable state law. *See Medical Comm. for Human Rights*, 432 F.2d at 677–78. The subsequent development of enumerated exemptions in Rule 14a–8(c) serves to define the "proper subjects" for such action. Therefore, if a proposal falls outside the range of "proper subjects," as implicitly defined by Rule 14a–8(c), neither the pro-

posal itself nor the fact that its sponsor intends to present the proposal at the next shareholders' meeting need be included in the proxy materials. The interpretation urged by Grimes would clearly subvert the purpose of the exemptions to Rule 14a–8.

## III. Conclusion

Grimes's proposal fell within exemption 7 of Rule 14a–8 and was therefore properly excluded from Centerior's proxy materials. Moreover, the failure to mention a proposal properly excluded under Rule 14a–8(c) does not render a proxy statement misleading under Rule 14a–9. The district court's order denying the injunction and dismissing Grimes's complaint is therefore

*Affirmed.*