C.L. GRIMES, Plaintiff–Appellant,

v.

OHIO EDISON COMPANY,
Defendant–Appellee.

No. 705, Docket 92–7812.

United States Court of Appeals,
Second Circuit.

Argued Jan. 4, 1993.

Decided May 3, 1993.

Thaddeus Holt, Law Office of Thaddeus Holt, Washington, DC, for plaintiff-appellant.

Thomas F. Clauss, Jr., Winthrop, Stimson, Putnam & Roberts, New York City, for defendant-appellee.

Before: PRATT and MAHONEY, Circuit Judges, and ZAMPANO,* District Judge.

ZAMPANO, Senior District Judge:

Appellant C.L. Grimes appeals from a judgment of the United States District Court for the Southern District of New York, Thomas P. Griesa, *District Judge,* entered June 30, 1992, dismissing his action against appellee Ohio Edison Company on the grounds that under federal securities laws: (1) Ohio Edison was not required to include Grimes' proposed amendment to the company's Articles of Incorporation in its distribution of proxy materials for its annual shareholders' meeting of April 25, 1991; and (2) Ohio Edison's failure to disclose to shareholders that Grimes would offer his amendment at the meeting did not render the proxy materials false and misleading.[1]

## BACKGROUND

Ohio Edison's Amended Articles of Incorporation and By–Laws vest the authority to make capital expenditures solely in the Board of Directors, except in certain circumstances not applicable here. On October 23, 1990, Grimes, a shareholder in Ohio Edison, requested that the Company enclose in the proxy materials for the next shareholders' meeting the following amendment to the Articles of Incorporation which would require stockholder approval of capital and construction expenditures in excess of a defined amount:

> The Company (or in the aggregate any combination of the Company and/or its subsidiaries) shall not without the formal

---

* Honorable Robert C. Zampano, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. The district court opinion is available at [1992] Fed.Sec.L.Rep. (CCH) ¶ 96,840, 1992 WL 168252, 1992 U.S.Dist.LEXIS 9283 (S.D.N.Y. June 29, 1992).

prior consent of the common shareholders in each instance, expend in any calendar year any monies by way of capital or construction expenditures in excess of $300,-000,000; *provided,* however, that the consent of such shareholders shall not be required unless the amount of such expenditures exceeds the cash amount paid to the common shareholders as dividends in the preceding calendar year.

Securities and Exchange Commission ("SEC") Rule 14a–8 requires a registrant such as Ohio Edison to include in its proxy materials a shareholder proposal that complies with the Rule's procedural requirements unless the proposal falls within any of thirteen exemptions, one of which—exemption 7—is relevant here.[2] The pertinent parts of Rule 14a–8 provide:

(c) The registrant may omit a proposal and any statement in support thereof from its proxy statement ... under any of the following circumstances:

* * * * * *

(7) If the proposal deals with a matter relating to the conduct of the ordinary business operations of the registrant; ...

If the registrant corporation determines that a shareholder proposal falls within an exemption, it must file the proposal with the SEC, together with a written explanation of why the proposal falls within the stated exemption. SEC Rule 14a–8(d).

In response to Ohio Edison's submission, the SEC's staff issued a "no-action" letter advising that the proposal appeared to concern a matter relating to the Corporation's ordinary business operations, and that it thus would not recommend enforcement action to the Commission if the proposal were omitted from the proxy materials.[3]

Thereafter, Ohio Edison distributed proxy materials for its annual shareholders' meet-ing which omitted any reference to Grimes' proposal.

Grimes then filed suit for a declaratory judgment and for damages against Ohio Edison claiming that it was required by SEC Rule 14a–8 to include his proposal in its proxy materials and that its failure to do so violated the Rule. The complaint further alleged that Ohio Edison should have informed its shareholders that Grimes would offer an amendment to its Articles of Incorporation at the shareholders' meeting and that the failure to do so rendered the proxy materials misleading in violation of SEC Rule 14a–9.

Ohio Edison moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), arguing that it failed to state a claim upon which relief could be granted. The district court granted the motion. It held that: (1) the proposal dealt with a matter relating to the conduct of the ordinary business operations of Ohio Edison within the meaning of Rule 14a–8(c)(7); and (2) the failure to mention the proposal did not render the proxy materials misleading within the meaning of Rule 14a–9. Grimes now appeals.

## DISCUSSION

We review the district court's grant of a motion to dismiss *de novo. Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir. 1992); *Austern v. Chicago Board Options Exchange, Inc.,* 898 F.2d 882, 885 (2d Cir.), ·cert. denied, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990).

At the outset we note that this is not the first lawsuit involving a shareholder proposal made by Grimes with respect to capital expenditures by a utility company. In October 1988, Grimes submitted a proposal that Centerior Energy Corporation, another Ohio utilities holding company, amend its Articles of Incorporation to provide that the Company

---

2. Ohio Edison argued in the district court and on appeal that two additional exemptions under SEC Rule 14a–8 are relevant to Grimes' proposal. The district court did not discuss these other exemptions and we need not do so because of our affirmance of the district court's judgment based on exemption 7.

3. On February 19, 1991, Grimes wrote the SEC, with a copy to Ohio Edison, setting forth an amended proposal, but the SEC staff found that the revised proposal, like the original, was covered by the exclusion of Rule 14a–8(c)(7). On appeal, Grimes maintains that the revision is relevant only on the issue of damages should the case be remanded to the district court. Reply Brief For Appellant, p. 19.

would not, without prior consent of the shareholders, expend in any year any funds for capital or construction projects in excess of the amount paid as common stock dividends in the prior year. When Centerior declined to include the proposal in its proxy materials, Grimes brought suit in the United States District Court for the District of Columbia, claiming violations of SEC Rules 14a–8 and 14a–9. The district court dismissed the action, and the court of appeals affirmed, holding that the proposal fell within the ordinary business operations exemption in Rule 14a–8(c)(7) and that the proxy materials were not misleading in violation of Rule 14a–9 by omitting reference to Grimes' proposal. *Grimes v. Centerior Energy Corp.*, 909 F.2d 529 (D.C.Cir.1990), *cert. denied,* 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

Grimes' proposal in the instant case is somewhat different from his proposal in *Centerior.*[4] Under Grimes' proposal in *Centerior,* whether shareholder approval is required for the current year's capital expenditures depends on the level of the previous year's dividends. In the present case, Grimes has inserted in his proposal a $300 million minimum threshold before shareholder approval is required for the current year's capital expenditures. Nevertheless, the basic issue is the same in both cases: Does a proposal that would require shareholder approval of all capital expenditures once a specified threshold is reached fall within the meaning of the "ordinary business operations" exemption of Rule 14a–8(c)(7)?

In adopting Rule 14a–8(c)(7) in its present form, the SEC stated that:

> the term "ordinary business operations" has been deemed on occasion to include certain matters which have significant policy, economic or other implications inherent in them. For instance, a proposal that a utility company not construct a proposed nuclear power plant retrospect, however, it seems apparent that the economic and safety considerations attendant to nuclear power plants are of such magnitude that a determination whether to construct one is not an "ordinary" business matter. Accordingly, proposals of that nature, as well as others that have major implications, will in the future be considered beyond the realm of an issuer's ordinary business operations. . . .

Adoption of Amendments Relating to Proposals by Security Holders, 41 Fed.Reg. 52,-994, 52,998 (1976). Accordingly, only "business matters that are mundane in nature and do not involve any substantial policy" considerations may be omitted under exemption 7. *Id.*

As the court of appeals noted in *Centerior,* the SEC staff's no-action letters typically treat proposals bearing on a company's capital expenditures as not having major implications, but rather as relating instead to ordinary business operations.[5] *Centerior,* 909 F.2d at 532.

Nevertheless, as recognized in *Centerior,* the SEC staff also has found that a proposal relating to capital expenditures may be sufficiently important to be outside the "ordinary business operations" exemption. For example, a shareholder proposal that any project involving a capital expenditure exceeding half a billion dollars be submitted for shareholder approval was found not to fall within the "ordinary business" exemption: "A capital expenditure of five hundred million dollars

---

**4.** Grimes' proposal in *Centerior* provided as follows:

> The Corporation (or in the aggregate any combination of the Corporation and/or its subsidiaries) shall not expend in any calendar year any monies by way of capital or construction expenditures in excess of the cash amount paid to the common shareholders as dividends in the preceding calendar year, without the formal prior consent of the common shareholders in each instance. 909 F.2d at 530.

**5.** *See Florida Power & Light Co.,* SEC No–Action Letter, 1983 WL 29038, 1983 SEC No–Act.LEX-

IS 1693 (Jan. 18, 1983) (the "determination of whether or not to . . . reduce capital expenditures . . . [is a] matter[ ] relating to the Company's ordinary business operations"); *Middle South Utilities Corp.,* SEC No–Action Letter, 1981 WL 26555, 1981 SEC No–Act.LEXIS 3164 (Feb. 24, 1981) (proposal to reduce capital expenditures relates to conduct of ordinary business operations); *General Public Utilities Corp.,* SEC No–Action Letter, 1980 WL 15253, 1980 SEC No–Act.LEXIS 2967 (Feb. 21, 1980) (proposal to halt current capital expenditures for a new "generating capacity" relates to the conduct of ordinary business operations).

has such major implications for the future of the Company that it transcends the realm of ordinary business operations." *Detroit Edison Co.,* 1980 WL 17575, 1980 SEC No–Act. LEXIS 2824 (Feb. 13, 1980).

■ We believe that the approach taken by the SEC staff to determine whether a public utility's capital expenditures fall within the "ordinary business operations" exemption is a logical and reasonable one. The problem with Grimes' proposal is that it does not target a particular capital expenditure, thereby precluding a determination as to whether any expenditure subject to his proposal has significant economic, policy or other implications. Once Grimes' spending threshold of $300 million is reached, each capital expenditure thereafter by Ohio Edison, including such routine expenditures as the purchase of a typewriter or a new desk, which are clearly matters of ordinary business operations, would require shareholder approval.[6] Thus, the district court correctly determined that the Grimes' proposal fell within Rule 14a–8(c)(7).

■ Grimes also argues that Ohio Edison's failure to mention in its proxy materials the fact that he intended to offer his proposal at the annual shareholders' meeting rendered those materials misleading under Rule 14a–9, which forbids the use of "false or misleading" proxy materials. 17 C.F.R. § 240.14a–9(a) (1992).

The sole decision on which Grimes relies to support his position is *New York City Employees' Retirement Sys. v. American Brands, Inc.,* 634 F.Supp. 1382 (S.D.N.Y. 1986). That decision, however, is inapposite. *American Brands* stands for the proposition that the omission of a proposal from proxy materials that was not properly excluded under Rule 14a–8(c) makes the proxy inherently misleading under Rule 14a–9. Here the issue is whether the omission of a proposal that was properly excluded under Rule 14a–8(c) can nonetheless render the proxy materials misleading under Rule 14a–9. The

court of appeals in *Centerior* addressed this issue and held that its exclusion does not make the proxy materials misleading. 909 F.2d at 533.

We reach the same conclusion. If Grimes' interpretation of Rule 14a–9 were adopted, it effectively would nullify the specific exemptions in Rule 14a–8 by compelling corporations to give notice in their proxies of proposals qualifying for a Rule 14a–8(c)(7) exemption. Thus, if the proposal itself need not be disclosed because it qualifies for an exemption under Rule 14a–8(c)(7), then the failure to disclose the fact that the proposal will be presented at the next shareholders' meeting cannot render the proxy materials misleading under Rule 14a–9.

Accordingly, the judgment of the district court appealed from herein is affirmed.

---

**6.** In finding that the proposal was within the "ordinary business operations" exemption, the district court stated that Ohio Edison's average capital expenditures for the past eleven years were $595 million, which is substantially in ex-

cess of the $300 million threshold in Grimes' proposal that would trigger shareholder approval for every dollar of capital expenditure in excess of the threshold.