**UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES ("UNITE"), et al., Plaintiffs,**

v.

**The MAY DEPARTMENT STORES COMPANY, Defendant.**

**No. 97 CIV. 3120(JGK).**

United States District Court, S.D. New York.

Nov. 14, 1997.

Friedman & Kaplan LLP, New York City, for Plaintiffs; Eric Seiler, Lance J. Gotko, of counsel

Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Defendant; Robert E. Zimet, Susan L. Saltzstein, William J. Hine, of counsel.

KOELTL, District Judge.

This is a motion to dismiss a complaint alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") and the regulations promulgated thereunder by the Securities and Exchange Commission (the "SEC").[1] The plaintiffs, Union of Needletrades, Industrial and Textile Workers ("Unite"), Southern Regional Board of Unite, and the May Company Independent Shareholders Committee (collectively, "UNITE"), seek recovery against the defendant, May Department Stores Company ("May"), on two grounds. The plaintiffs' first cause of action seeks declaratory and injunctive relief on the ground that the defendant's proxy solicitations violated § 14(a) of the Exchange Act, 15 U.S.C. § 78u(a), and SEC Rules 14a–4(a), 14a–4(b), and 14a–4(c). The plaintiffs' second cause of action seeks declaratory and injunctive relief on the ground that the defendant's proxy solicitations contained false and misleading statements in violation of § 14(a) of the Exchange Act and SEC Rule 14a–9. The defendant moves to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6) and for failure to plead fraud with particularity pursuant to Fed. R.Civ.P. 9(b). For the reasons that follow, the defendant's motion **granted.**

## I.

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences are construed in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *Kwiatkowski v. Bear Stearns Co., Inc.*, No. 96 Civ. 4798, 1997 WL 538819, *1 (S.D.N.Y. Aug.29, 1997). In deciding the motion, the Court can consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. American Film Techn., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *I Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.1991); *Skeete v. IVF America, Inc.*, 972 F.Supp. 206, 208 (S.D.N.Y.1997). Moreover, the Court can consider the full text of SEC filings that are integral to the complaint. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991); *Geiger v. Solomon–Page Group, Ltd.*, 933 F.Supp. 1180, 1183 (S.D.N.Y.1996).

"The [C]ourt's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir.1990) (citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985)); *Skeete*, 972 F.Supp. at 207. Thus, the Court should dismiss the complaint only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Kwiatkowski*, 1997 WL 538819, at *1. Accordingly, the Court accepts the following facts alleged in the plaintiffs' complaint as true for purposes of this motion.

---

1. This motion was originally directed against the plaintiffs' initial complaint, dated April 30, 1997. The parties have agreed to the plaintiffs' service and filing of an amended and supplemental complaint, dated June 30, 1997, and have further agreed that this Court should consider the defendant's motion as though it were directed against the new pleading. *See* Pls.' Br. at 1, n 1. For purposes of this opinion, all references to the "complaint" refer to the amended and supplemental complaint.

On or about March 5, 1997, the defendant received a letter from UNITE in which the plaintiffs, claiming status as May shareowners, indicated that they intended to submit three proposals at May's upcoming annual meeting. (Compl.¶ 20.) The proposals would: (1) eliminate May's shareowner rights plan (the "anti-poison pill proposal"); (2) require declassification of May's board of directors; and (3) modify May's vendor standards of conduct. (Zimet Aff.Ex.B.) The letter did not ask that any of the three proposals be included in the proxy solicitation materials that the defendant intended to send to its shareowners prior to the annual meeting. (Id.)

Approximately one month later, the plaintiffs filed their own preliminary, independent proxy solicitation materials with the SEC for review. The defendant was aware of this preliminary filing. (Compl.¶ 27.) UNITE informed the defendant on both April 11 and April 14 of the plaintiffs' intention to launch an independent proxy solicitation. UNITE further informed the defendant that arrangements had already been made for delivery of the plaintiffs' independent proxy solicitation materials to a majority of May's shareowners. (Compl.¶¶ 28, 31.) The plaintiffs had not, however, actually commenced the independent solicitation at the time of their communications with the defendant. (Compl.¶ 35.)

The defendant did not include UNITE's anti-poison pill proposal as a line item for shareowner vote on May's proxy card. (Compl.¶¶ 28, 32.) The defendant issued its own proxy solicitation materials dated April 17, 1997 (the "original proxies"). (Compl. ¶ 32; Zimet Aff.Ex.C.) May's original proxies did include line items for shareowners to vote on a proposal to require declassification of May's board of directors and to modify May's vendor standards of conduct. At oral argument on this motion, the parties advised the Court that both proposals were included pursuant to Rule 14a–8, the first at the instance of another shareowner and the second at the instance of the Southern Regional Joint Board of Unite. The original proxy materials also contained an explanation that, in addition to the proposal concerning vendor standards of conduct, UNITE intended to introduce a proposal requiring declassification of May's board of directors and a proposal to require the company to eliminate the shareowner rights plan (the "anti-poison pill proposal"). May advised its shareowners that the proxy holders intended to exercise their discretionary authority to vote against these proposals should they be presented at the annual meeting. (Zimet Aff.Ex.C.)

On April 29, 1997, the plaintiffs commenced an independent proxy solicitation and issued their own proxies (the "independent proxies") to May shareowners. (Compl.¶ 35.) UNITE decided to include only one of the proposals that it had previously submitted to the defendant, the anti-poison pill proposal, for shareowner vote in the independent proxy solicitation. (Zimet Aff.Ex.D.) In response, on May 2, 1997, the defendant distributed a second set of proxy materials to its shareowners (the "supplemental proxies") that listed the plaintiffs' anti-poison pill proposal as a separate voting item. The defendant instructed its shareowners that if they had previously returned the original proxies and did not return the supplemental proxies, the proxy holders would use the original proxies to vote against the plaintiffs' anti-poison pill proposal. (Compl. ¶ 36; Zimet Aff.Ex.E.) Additionally, the defendant instructed its profit sharing plan members to return their supplemental proxies one week earlier than other shareowners. (Compl.¶¶ 37, 38.) The profit sharing plan members were advised that the board of directors recommended a vote against UNITE's anti-poison pill proposal and that if a shareowner had submitted the prior proxy which did not include UNITE's proposal, the trustee would exercise its discretionary authority to vote against the proposal. (Zimet Aff.Ex. 2, 4.) If the profit plan members wished to specify the manner in which their shares were to be voted on the anti-poison pill proposal, they were advised to return the supplemental proxies. (Id.)

The plaintiffs' proposal was narrowly defeated at May's annual meeting on May 23, 1997. (Compl.¶¶ 39, 40.) Had the defendant only considered proxies which afforded shareowners the opportunity to vote on the

anti-poison pill proposal, namely UNITE's independent proxies and May's supplemental proxies, the plaintiffs' initiative would have been approved. (Compl.¶ 42.)

## II.

The defendant moves to dismiss the first claim for relief in the complaint for failure to state a claim upon which relief can be granted because, according to May, May properly exercised discretionary authority to vote against the plaintiffs' proposal. The defendant argues that it obtained discretionary authority through the original proxy solicitation with respect to any shareowner proposal that might be raised at the meeting. Further, the defendant argues that it retained discretionary authority when, after the plaintiffs commenced their solicitation of the holders of a majority of shares, the defendant sent supplemental proxies providing shareowners the specific right to vote on the plaintiffs' proposal. The plaintiffs argue that the defendant did not possess any discretionary authority with respect to the anti-poison pill proposal because May was aware at least six weeks prior to its original proxy solicitation that the plaintiffs intended to raise the anti-poison pill proposal at the annual meeting.

■ Pursuant to the SEC Regulations governing proxy solicitations, a shareowner may confer such discretionary authority with respect to matters which the company does not know, a reasonable time before the solicitation, are to be represented at the annual meeting. 17 C.F.R. §§ 240.14a–4(a)(3), 240.14a–4(c)(1).[2] Under Rule 14a–8, a security holder can follow a procedure for requiring a registrant to include a proposal in the registrant's proxy, but this Rule is subject to various restrictions. *See* 17 C.F.R. § 240.14a–8. While the SEC Regulations do not expand upon the concept of knowledge

within a reasonable time, the SEC has interpreted Rule 14a–4(c)(1) to mean that the company may preserve its discretionary authority by making certain disclosures after it receives notice of a non-Rule 14a–8 shareowner proposal. The disclosures with respect to a non-Rule 14a–8 proposal require the company to include in its original proxy solicitation materials both the nature of any shareowner proposals that it has been advised may be presented at the annual meeting, and the manner in which the company intends to exercise its discretionary authority. *See Borg–Warner Security Corp, No–Action Letter,* 1996 WL 119943, *9–10 (S.E.C. Mar. 14, 1996); *Idaho Power Co., No–Action Letter,* 1996 WL 114595, *9 (S.E.C. Mar. 13, 1996).[3] See also* Amendments to Rules on Shareholder Proposals, 17 C.F.R. Part 240, 1997 WL 578696, *21 (S.E.C. Sept. 18, 1997) (Under the current regulations, the company can obtain discretionary authority despite advance notice of a non–Rule 14a–8 proposal if it complies with the disclosures specified by these SEC opinion letters.)

■ The defendant followed the SEC's recommended procedures by disclosing the substantive aspects of the plaintiffs' three proposals in May's original proxy solicitation materials. Additionally, the defendant clearly informed its shareowners that the company would exercise the returned original proxies to vote against UNITE's anti-poison pill proposal which is the subject of this action. Thus, in accordance with the SEC's no-actin letters in other cases, the defendant validly obtained discretionary authority with respect to the anti-poison pill proposal through its original proxies regardless of May's advance knowledge that the plaintiffs were contemplating an independent proxy solicitation.

*New York City Employees' Retirement Sys. v. SEC,* 45 F.3d 7, 12–13 (2d Cir.1995) (No-action letters, which "are deemed interpretive because they do not impose or fix a legal relationship upon any of the parties," are entitled to deference from the courts even though such letters do not receive "the same high level of deference that is accorded formal policy statements or rule-making orders.")

---

**2.** Rule 14a–4(c)(1) provides: "A proxy may confer discretionary authority with respect to any of the following matters: (1) matters which the persons making the solicitation do not know, a reasonable time before the solicitation, are to be presented at the meeting, if a specific statement to that effect is made in the proxy statement or form of proxy...."

**3.** While not binding, the SEC opinion letters are entitled to some deference from the Court. *See*

In its no-action letters, the SEC has made clear that the company loses discretionary authority as soon as a proponent of a proposal actually commences an independent proxy solicitation of the holders of a majority of the shares entitled to vote on the matter, or if a greater percentage is required to carry the proposal, the holders of the minimum required. The SEC has also, however, interpreted Rule 14a–4(c)(1) to offer the company the opportunity to retain discretionary authority after such an independent proxy solicitation. The company can retain any discretionary authority that it obtained through original proxies if it issues supplemental proxies after an independent proxy solicitation. The company's supplemental proxies must clearly explain the shareowner proposals omitted from the original proxies. The supplemental proxy solicitation materials must also clearly indicate that the proxy holders will use the original proxies to vote against such proposals unless the shareowners revoke discretionary authority by returning the supplemental proxies. *See Larkin, et al. v. Baltimore Bancorp.,* 769 F.Supp. 919, 927 (D.Md.1991), *aff'd,* 948 F.2d 1281 (4th Cir.1991); *United Mine Workers of Am., et al. v. Pittston Co.,* No. 89–0962, 1989 WL 201060, *10 (D.D.C., Nov.24, 1989) (citing SEC opinion letter to the parties).

In this case, the defendant followed the procedures advised by the SEC and cited by other courts to retain discretionary authority over the plaintiffs' anti-poison pill proposal. In its supplemental proxies, the defendant added UNITE's proposal as a line-item to be voted on at the annual meeting. Further, the defendant prominently noted in its supplemental proxy solicitation materials that the company would use the original proxies to vote against the anti-poison pill proposal unless shareowners revoked discretionary authority by submitting the supplemental proxies. (Zimet Aff.EX.E.)

The plaintiffs argue that the SEC could not reasonably have contemplated the two step proxy solicitation used in this case. But that is in fact the import of the no-action letters cited in *Larkin* and *Pittston.* Moreover, the plaintiffs candidly conceded at oral argument that there is no case or SEC no-action letter that has explicitly disapproved the two step solicitation process used in this case. The facts in this case are not analogous to the facts in *Pittston* where the defendant was denied discretionary authority after its supplemental proxy solicitation. *Pittston,* 1989 WL 201060 at *9. In *Pittston,* unlike this case, the company failed to include the specific proposals in its supplemental proxy solicitation materials and provide the shareowners the opportunity to revoke the previously given discretionary authority.

The plaintiffs also argue that, to the extent the SEC has authorized a two step proxy solicitation process, and to the extent it fails to require the inclusion of a shareowner proposal in an original proxy until the proponent has commenced an independent proxy solicitation for a majority of the shares entitled to vote, that interpretation should be rejected as an unreasonable interpretation of Rule 14a–4(c)(1). There is however, nothing unreasonable about the SEC's interpretation of Rule 14a–4(c)(1). Prior to the time that a proponent of a shareowner proposal has actually commenced an independent proxy solicitation, notice to the company of a possible proposal may never come to fruition. Thus, at that time the company does not know that the matters are to be presented at the annual meeting, and the matters are an appropriate subject for discretionary · authority under Rule 14a–4(c)(1). If the proponent of a shareowner proposal sought to require the company to include a proposal in the company's original proxies, the proponent could comply with the requirements of Rule 14a–8. Failing that, it is not unreasonable for the company to have the assurance that a proponent is sufficiently serious about a shareowner proposal so that it has commenced an independent proxy solicitation rather than simply paid for a stamp to advise the company of the proponent's intention. The company should not be required to forego the availability of discretionary authority specifically provided by Rules 14a–4(a)(3) and 14a–4(c)(1) without sufficient assurance that the proponent is proceeding with a proposal to be presented at the annual meeting.

In this case, the defendant could not know whether UNITE would seriously pursue its

anti-poison pill proposal at the annual meeting until the plaintiffs actually incurred the expense of commencing an independent proxy solicitation for a majority of the shares. This case, therefore, provides a clear example of the disruption and confusion that would be created by an interpretation of SEC Rule 14a 4(c)(1) that forced the company to include any and all potential shareowner proposals in its original proxies. Moreover, any unfairness that the plaintiffs may suffer from the SEC's interpretation is ameliorated by the mechanism provided under SEC Rule 14a–8 regarding presentation of shareowner proposals directly within the company's original proxies. In this case, the plaintiffs expressly did not make their anti-poison pill proposal under SEC Rule 14a–8.

Thus, the defendants correctly argue that an interpretation of SEC Rule 14a–4(c)(1) which effectively forces the inclusion of any and all shareowner proposals in the company's original proxies would allow the plaintiffs to "back door" their proposals past the detailed requirements of Rule 14a–8. Such an interpretation should also force the defendant to forego the discretionary authority otherwise provided to it. 17 C.F.R. §§ 240.14a–4(a)(3), 240.14a–4(c)(1). This result is contrary to the legislative and administrative purpose behind the shareowner proposal provisions of the Exchange Act. *See* SEC Commissioner Steven M.H. Wallman, "Reflections on Shareholder proposals: Correcting the Past; Thinking the Future," (Oct. 8, 1996) (Under the current SEC regulations, shareowners who employ the "tactic" of informing the company that they intend to conduct an independent proxy solicitation entirely outside the structure of SEC Rule 14a–8 undermine disclosure and add uncertainty to the system.) (cited in Michael J. Connell, *Shareholder Proposals,* 970 Preparation of Annual Disclosure Documents 397, 431–32 (Practicing L.Inst., Corp. L. & Pract.1997)).[4]

Therefore, the plaintiffs have failed to state a claim that the defendant violated the proxy rules by exercising discretionary authority to vote against the plaintiffs' anti-poison pill provision because, even accepting the plaintiffs' contentions, that discretionary authority was exercised lawfully in accordance with the Exchange Act and the SEC Rules.

### III.

The defendant also moves to dismiss the second claim for relief, which alleges that the defendant's proxy solicitation materials were false and misleading in violation of § 14(a) of the Exchange Act and SEC Rule 14a–9 promulgated thereunder. The defendant argues that the plaintiff has failed to state a claim because none of the alleged misstatements were false or misleading. Moreover, the defendant also moves to dismiss the second claim for relief for failure to plead fraud with particularity under Fed.R.Civ.P. 9(b).

### (A)

SEC Rule 14a–9 provides that:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9. The strict pleading requirements of Fed.R.Civ.P. 9(b) apply to SEC Rule 14a–9 claims. *See, e.g., Goldman v. Lexington Ave. & 42nd St. Corp.,* No. 84

**4.** *See also* S.E.C. Proposed Amendments, 1997 WL 578696 at *1–2 (noting that the Amendments are designed to "provide clearer ground rules for management's exercise of discretionary voting authority when a shareholder notifies the company that it intends to present a proposal outside the mechanism of rule 14a–8"). To correct some of the ambiguities in the current regulations, the SEC proposes an amendment to Rule 14a–4(c)(1) to give management discretionary authority when it did not have notice of the shareholder proposal more than 45 days before the date on which management first mailed its original proxy solicitation. *Id.* at *21.

Civ. 5341, 1987 WL 8340, at *4 (S.D.N.Y. Mar.18, 1987); *Brayton v. Ostrau,* 561 F.Supp. 156, 163 (S.D.N.Y.1983); *Lewis v. Valley,* 476 F.Supp. 62, 64–65 (S.D.N.Y.1979) (all dismissing SEC Rule 14a–9 claims for failure to plead with the specificity required by Fed.R.Civ.P. 9(b)).

Further, the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes precise pleading requirements for claims alleging misleading statements and omissions.[5] Sections 21D(b)(1) and (2), entitled "Requirements For Securities Fraud Actions" and added to Title I of the Securities Exchange Act by § 101(b) of the PLSRA, read as follows:

(b) REQUIREMENTS FOR SECURITIES FRAUD ACTIONS.—

(1) MISLEADING STATEMENTS AND OMISSIONS.—In any private action arising under [Title I of the Securities Exchange Act of 1934] in which the plaintiff alleges that the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) REQUIRED STATE OF MIND.— In any private action arising under this title in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. Pub.L. No. 104–67, 109 Stat. 737, 747.

**(B)**

▮ In this case, the plaintiffs have failed to plead a viable claim for a violation of SEC Rule 14a–9 because none of the alleged misstatements are materially false or misleading. Most of the statements that UNITE claims to be misleading actually refer to legal conclusions drawn by the plaintiffs that the Court has already rejected. For example, UNITE alleges that the defendant's original proxy solicitation materials and solicitation of discretionary authority were false and misleading because May was deprived of such authority "as a matter of law" upon learning of the plaintiffs' intention to raise the anti-poison pill proposal at the annual meeting. (Compl.¶¶ 51, 52, 55.) Since the defendant was not required to include UNITE's proposal as a line item on May's original proxies, the defendant's failure to disclose that the anti-poison pill proposal might be presented at the annual meeting does not render the original proxy solicitation materials misleading. *See Grimes v. Ohio Edison Co.,* 992 F.2d 455, 458 (2d Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). Thus, to the extent the allegations supporting the plaintiffs' second claim for relief under SEC Rule 14a–9 merely restate their first claim under SEC Rule 14a–4, the claims are not actionable. The plaintiffs acknowledged at oral argument that if the Court rejected, as the Court has, the plaintiffs' legal arguments with respect to the alleged improper exercise of discretionary authority, there are only two alleged false statements that remain.

▮ First, the plaintiffs argue that the defendant's original and subsequent proxy solicitations sent to participants in the profit sharing plans falsely implied that the trustee of the profit sharing plans would exercise its independent discretion when, in fact, May instructed the trustee to vote against the plaintiffs' proposal. (Compl.¶¶ 53, 56.) However, May's original proxy solicitation materials clearly stated that the trustee "will vote in accordance with the recommendations

---

5. Both parties agreed at oral argument that the Private Securities Litigation Reform Act applies in this case. The plaintiffs additionally conceded that they are alleging intentional false or misleading statements in the defendant's proxy solicitation materials.

of the board of directors and in its discretion on any other matters that may properly come before the [shareowner] meeting. . . ." (Compl. ¶ 34; Zimet Aff. Ex. 1, 3.) Those proxy materials also explicitly cross-referenced the section of the proxy statement for the meeting entitled "General—Other Matters" where it stated that the board of directors recommended voting against the anti-poison pill proposal and that the proxy holders intended to exercise discretionary authority to vote against UNITE's anti-poison pill proposal. Moreover, May's supplemental proxies were not returned, the trustee "will exercise its discretionary authority to vote against [UNITE's anti-poison pill proposal]." (Compl. ¶ 37; Zimet Aff. Ex. 2, 4.) These disclosures were not deceptive and could not have left the shareowners in any doubt that the trustee would exercise its discretionary authority to vote against the anti-poison pill proposal in accordance with the recommendations of the board of directors.

■ Second and finally, the plaintiffs argue that the supplemental proxy solicitation materials sent to the members of the profit sharing plans were false because the materials were delivered too late for many members to sign and return the supplemental proxies prior to the May 16, 1997 deadline set by the defendant. (Compl. ¶ 57.) The plaintiffs do not, however, allege how the specific statements in the supplemental proxies were false or misleading since the plaintiffs do not appear to dispute that the proxy materials accurately set out the procedure that would be followed. The supplemental proxies stated that if the proxies were not received on or before May 16, the trustee would vote those shares in proportion as the other shares held by the trustee were voted in accordance with instructions received from other participants in the plans. Moreover, even if May's profit sharing plan members were afforded one week less than non-member shareowners to respond to the supplemental proxies (Compl. ¶ 38,) the plan members were still given two weeks to cast their votes. Thus, May issued its supplemental proxy solicitation materials in a timely fashion to the profit sharing plan members. *See Bolger v. First State Fin. Servs.*, 759 F.Supp. 182, 197 (D.N.J.1991) (supplemental proxies

issued 13. days before the company's annual meeting "provided shareholders sufficient time to consider information contained in the Supplemental Proxy Statement.") (citing *Howell v. Mngt. Assistance, Inc.*, 519 F.Supp. 83, 88 (S.D.N.Y.1981), *aff'd*, 685 F.2d 424 (2d Cir.), *cert. denied*, 459 U.S. 862, 103 S.Ct. 138, 74 L.Ed.2d 118 (1982) (same)).

The plaintiffs have failed to state a claim for relief under § 14(a) of the Exchange Act and SEC Rule 14a–9 because none of the defendant's alleged misstatements are actionable. *See generally Grimes v. Ohio Edison Co.*, 992 F.2d at 458; *Brayton*, 561 F.Supp. at 168. Thus, it is unnecessary for the Court to reach the question of whether the plaintiffs have pleaded fraud with sufficient particularity.

### CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss the Complaint is **granted.** The Clerk is directed to enter judgment dismissing the complaint and closing the case.

**SO ORDERED.**